ALGIE D. TOOMER, JR., PLAINTIFF v. GARLAND GARRETT, JOHN DOE #1, JOHN DOE #2, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, STATE OF NORTH CAROLINA, NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, NORTH CAROLINA DEPARTMENT OF CORRECTION, DEFENDANTS

No. COA01-1385

(Filed 31 December 2002)

**1. Constitutional Law— substantive due process—release of personnel file**

The trial court erred by granting defendant's motion to dismiss for failure to state a claim where plaintiff was a state employee who alleged that his substantive due process rights and his right to privacy under the federal and state constitutions were violated by the release of his entire personnel file, including his social security number, his medical diagnosis, the names and addresses of family members, and his personal financial data. Plaintiff alleged an intentional and unjustified disclosure which, if proven, offends a sense of justice and which overcomes the high level of deference accorded to governmental action on rational basis review.

**2. Civil Rights— § 1983 claim—money damages—state not a person**

The trial court did not err by dismissing plaintiff's 42 USC § 1983 claim for money damages against a state and state officials arising from the release of a state employee's personnel file. The State and its officials acting in their official capacities are not considered persons under section 1983 for the recovery of monetary damages.

**3. Civil Rights— § 1983 claim—injunctive relief against state—state as person**

The trial court erred by dismissing a 42 U.S.C. § 1983 claim for injunctive relief against the State and its officials arising from the release of a personnel file. The State and its officials acting in their official capacities are considered persons under section 1983 for injunctive relief.

**4. Immunity— qualified—considered on 12(b)(6) motion**

The trial court erred in a 42 U.S.C § 1983 action by refusing to consider qualified immunity on a motion to dismiss for failure to state a claim on the reasoning that qualified immunity must be pleaded as a defense. However, the trial court properly ruled that it could not consider defendants' affidavits on the subject.

**5. Immunity— qualified—clearly established right**

Two state officials sued under 42 U.S.C § 1983 for releasing a state employee's personnel file were not entitled to a dismissal for failure to state a claim based upon qualified immunity. Qualified immunity requires a determination of whether the right in issue was clearly established at the time it was allegedly violated; the right to be free of arbitrary, abusive, and illegitimate government action such as is described in this complaint is a clearly established right of which any person in an official position would have been aware.

**6. Constitutional Law— procedural due process—release of personnel file**

A former state employee failed to state a claim for violation of his procedural due process rights in an action arising from the release of his personnel file where plaintiff did not allege that the information was released in connection with a demotion or dismissal; any expectation plaintiff may have had in the continued confidentiality of his personnel file was not the kind of "monetizable" property interest generally protected by procedural due process; and plaintiff made no argument that the North Carolina Constitution provides greater due process protection for his interest than the federal constitution.

**7. Constitutional Law— equal protection—release of personnel file—class of one**

Plaintiff, a former state employee, successfully stated a 42 U.S.C § 1983 claim for violation of the Equal Protection Clause

under the class of one theory arising from the release of his personnel file while the files of others similarly situated were not released. Plaintiff succeeded in alleging that there is no rational basis for defendants' actions.

**8. Constitutional Law— First Amendment—grievance filed against state—retaliation**

A former state employee did not satisfy the first element of a 42 U.S.C § 1983 First Amendment retaliation claim where he asserted that his personnel file was disclosed to the media and public in retaliation for a successful employment grievance he had filed against the State. The contention that the right to file employment grievances against the State is protected under the right to petition for redress of grievances has not been adopted by the North Carolina courts or the Fourth Circuit.

**9. Privacy— intrusion into seclusion—statement of claim**

A former state employee successfully stated a claim for intrusion into seclusion where the action rose from the release of his personnel file. Intrusion into seclusion is defined as an intentional intrusion highly offensive to a reasonable person; the unauthorized examination of the contents of one's personnel file, especially when the file includes sensitive information such as medical diagnosis and financial information, would be highly offensive.

**10. Jurisdiction— subject matter—sovereign immunity**

Although matters outside the pleadings may be considered in evaluating an assertion of lack of subject matter jurisdiction, it has not been decided whether sovereign immunity is an issue of subject matter jurisdiction.

**11. Privacy— invasion by State—sovereign immunity**

A claim for tortious invasion of privacy against State agencies and defendants in their official capacities was properly dismissed where there was not an allegation of waiver of sovereign immunity that would subject defendants to this suit.

**12. Privacy— release of personnel file—retaliatory and malicious—official capacity immunity**

State officials were not entitled to dismissal of a tortious invasion of privacy claim on the basis of official capacity immunity where plaintiff's complaint contained multiple allega-

tions that the release of his personnel file was done outside the scope of authority, maliciously, in bad faith, and for retaliatory reasons.

**13. Contracts— settlement agreement—action for breach— statement of claim**

Plaintiff successfully stated a claim for breach of contract even though he may be entitled to only nominal damages or injunctive relief where he alleged the existence of a settlement contract with the State, that the agreement provided that files pertaining to plaintiff's employment discrimination charge would be maintained separately from his personnel file, and that defendants included the contract in his personnel file.

**14. Immunity— sovereign—breach of contract and malicious conduct claims**

Claims of breach of contract and malicious and unauthorized conduct by state officials precluded dismissal on sovereign immunity and official immunity grounds.

**15. Negligence— release of personnel file—statement of claim**

Plaintiff, a former state employee, adequately stated a claim for relief for gross negligence arising from the release of his personnel file where there were allegations that there was a duty to keep the file confidential and that the release of the file was a proximate cause of plaintiff being harassed by third parties.

**16. Immunity— sovereign—allegations of gross negligence and malice**

A gross negligence claim against the State and other defendants in their official capacities was properly dismissed where plaintiff did not sufficiently allege waiver of sovereign immunity; however, plaintiff sufficiently alleged malice and abuse of authority that some of the defendants were not entitled to dismissal of the claim on the basis of official immunity.

**17. Conspiracy— civil—release of personnel file**

The trial court erred by dismissing a civil conspiracy claim arising from the release of a personnel file for failure to state a claim where plaintiff alleged that several individuals acted in concert to injure plaintiff and that defendants wantonly or intentionally schemed to retaliate against plaintiff by committing the unlawful acts alleged.

**18. Immunity— sovereign—not alleged—corrupt conduct**

The State and other defendants were entitled to dismissal of a civil conspiracy claim arising from the release of a personnel file where plaintiff did not allege waiver of sovereign immunity; however, individual defendants against whom plaintiff alleged malicious and corrupt conduct will not be protected by official immunity.

Appeal by plaintiff from order entered 23 April 2001 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 17 September 2002.

*The McGuinness Law Firm, by J. Michael McGuinness; and Richard C. Hendrix, for plaintiff-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Tiare B. Smiley, Assistant Attorney General Neil Dalton, Assistant Attorney General Sarah Ann Lannom, for the State.*

*Moss, Mason & Hill, by William L. Hill, on behalf of Southern States and North Carolina Police Benevolent Associations, amicus curiae.*

MARTIN, Judge.

Plaintiff, a former state government employee, filed this action alleging multiple state and federal claims arising from the alleged disclosure and dissemination of the contents of his state personnel file in and after April 1997. His complaint includes claims for violations of equal protection of the laws and substantive and procedural due process under the U.S. and North Carolina Constitutions, violation of his right to petition the government for redress of grievances under the First Amendment, and common law tortious invasion of privacy, gross negligence, civil conspiracy, and breach of contract.

In summary, plaintiff alleged that he had been a State employee since September 1986 and that his employment relationship was governed, in part, by the provisions of Chapter 126 of the North Carolina General Statutes. During his employment, initially with the Department of Correction, plaintiff asserted a claim against the Department for employment discrimination. The claim was settled in 1991; plaintiff and the Department of Correction (NCDOC) entered into a negotiated settlement agreement, which provided, *inter alia,*

that all files relating to the employment discrimination claim would "be maintained in an area separate and apart from" plaintiff's personnel file. Plaintiff alleged that he was subsequently employed by the Department of Transportation (NCDOT). In 1996, plaintiff asserted an employment claim against NCDOT; that claim was settled by agreement dated 20 February 1997.

Plaintiff alleged that in April 1997, defendant Garrett, who was Secretary of NCDOT and was named in both his official and individual capacities, and Does #1 and #2, whose names are unknown to plaintiff, released plaintiff's personnel records to various news media and to the public after having been warned by NCDOT's personnel officers that such release would be unlawful. Plaintiff alleged that defendants allowed false information to be inserted into the records, kept his records separate from those of other state employees so as to facilitate access to them, and allowed unauthorized persons to go through the records, copy them, and disseminate the contents through the media and the Internet. He alleged that the information made available by defendants included his photograph and home address; his Social Security number; his personnel history, including that which was made confidential by the 1991 settlement agreement; his medical history; his educational history and testing data; his credit history; his retirement data and financial information; the names and addresses of his family members; and other confidential, personal and private information. Plaintiff also alleged that copies of his confidential personnel records with the NCDOC were provided to the Associated Press in January 1998 and published in the Fayetteville Observer Times.

Plaintiff alleged that such actions were undertaken by defendants as part of an intentional scheme of conduct to harass, intimidate, retaliate against, and damage him due to his having engaged in constitutionally protected activities in connection with his assertion of employment discrimination claims against the NCDOC and NCDOT. Plaintiff alleged defendants' conduct was malicious, undertaken in bad faith and for discriminatory reasons, and so exceeded their authority as to amount to a waiver of "any possible state law immunity."

As a result of defendants' actions, plaintiff alleged that he has been harassed and intimidated; that as a former law enforcement officer, he has been endangered by the dissemination of personal information about himself and his family members; that he has been subjected to public humiliation and ridicule; and that he has been

effectively blacklisted from future government or law. enforcement employment. He sought compensatory and punitive damages, declaratory and injunctive relief, and costs and attorneys' fees.

Defendants moved to dismiss the complaint pursuant to G.S. § 1A-1, Rule 12(b) for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim for which relief may be granted. The trial court entered an order dismissing all of plaintiff's claims for failure to state a claim upon which relief may be granted, and some of his claims against certain defendants for lack of jurisdiction. Plaintiff appeals from the order of dismissal; defendants cross-assign as error the trial court's failure to dismiss the complaint on additional grounds.

---

Plaintiff asserts that the trial court erred in (1) dismissing his complaint for failure to state a claim upon which relief may be granted and (2) dismissing his federal constitutional claims against the State, NCDOT, NCDOC, and individual defendants in their official capacities for lack of jurisdiction. We affirm in part, reverse in part and remand this case to the trial division for further proceedings.

The question before a court considering a motion to dismiss for failure to state a claim is whether, if all the plaintiff's allegations are taken as true, the plaintiff is entitled to recover under some legal theory. *See Block v. County of Person*, 141 N.C. App. 273, 540 S.E.2d 415 (2000). A complaint may be dismissed pursuant to Rule 12(b)(6) where "(1) the complaint on its face reveals that no law supports a plaintiff's claim, (2) the complaint on its face reveals the absence of facts sufficient to make a good claim, or (3) the complaint discloses some fact that necessarily defeats a plaintiff's claim." *Governors Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 253, 567 S.E.2d 781, 790 (2002). "In reviewing a dismissal of a complaint for failure to state a claim, the appellate court must determine whether the complaint alleges the substantive elements of a legally recognized claim and whether it gives sufficient notice of the events which produced the claim to enable the adverse party to prepare for trial." *Brandis v. Lightmotive Fatman, Inc.*, 115 N.C. App. 59, 62, 443 S.E.2d 887, 888 (1994).

### I. Substantive Due Process

**[1]** Plaintiff alleges that defendants violated his substantive due process rights and right to privacy under both the federal and state constitutions. U.S. Const. amend. XIV, § 1; N.C. Const., Art. I., §§ 1, 19,

**TOOMER v. GARRETT**

[155 N.C. App. 462 (2002)]

35, 36. The Fourteenth Amendment provides that government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Suit for relief from federal constitutional violations is authorized under 42 U.S.C. § 1983, which states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In general, substantive due process protects the public from government action that unreasonably deprives them of a liberty or property interest. *See Huntington Properties, L.L.C. v. Currituck Co.*, —— N.C. App. ——, ——, 569 S.E.2d 695, 703 (2002). If that liberty or property interest is a fundamental right under the Constitution, the government action may be subjected to strict scrutiny. *Id.* However, where the interest is not fundamental, the government action need only have a rational relation to a legitimate governmental objective to pass constitutional muster. *Id.* This legitimate governmental objective need not be the actual objective of the state actors. *Id.*

In terms of fundamental rights, one's privacy interest in the information contained in personnel files does not fall under the recognized fundamental right to privacy with respect to personal and family decision making. *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998). Plaintiff argues alternatively that the information he alleges defendants disclosed is covered by that strain of the right to privacy that protects against disclosure of highly personal information. *See Whalen v. Roe*, 429 U.S. 589, 51 L. Ed. 2d 64 (1977). *See also Ferguson v. City of Charleston*, 186 F.3d 469, 482-83 (4th Cir. 1999), *overruled on other grounds*, 532 U.S. 67, 149 L. Ed. 2d 205 (2001) (declining to decide whether medical information protected by right to privacy where disclosure necessary to serve compelling state interest); *Walls v. City of Petersburg*, 895 F.2d 188 (4th Cir. 1990) (certain financial information protected by right to privacy); *ACT-UP Triangle v. Commission for Health Services of the State of N.C.*, 345 N.C. 699, 483 S.E.2d 388 (1997) (declining to decide whether medical information protected by right to privacy where necessary to serve compelling interest and chances of unauthorized disclosure low under established protocols).

However, we need not determine whether the alleged conduct violated a fundamental right. The Fourteenth Amendment also protects against arbitrary government action that is so egregious that it "shocks the conscience" or offends a "sense of justice." *U.S. v. Salerno*, 481 U.S. 739, 746, 95 L. Ed. 2d 697, 708 (1987); *County of Sacramento v. Lewis*, 523 U.S. 833, 140 L. Ed. 2d 1043 (1998); *State v. Guice*, 141 N.C. App. 177, 541 S.E.2d 474 (2000). Where an executive act is at issue, as in the instant case:

> the issue of fatal arbitrariness should be addressed as a "threshold question," asking whether the challenged conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

*Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (citations omitted). Whether an executive action shocks the conscience is generally judged by historical standards in similar situations, as well as indications of whether the act was intentional or merely negligent. *See id.* The complaint in the present case contains multiple allegations that defendants acted with a high level of culpability, including deliberate indifference, malice, willfulness, and retaliation. "While intentional conduct is that 'most likely' to meet the test, that alone will not suffice; the conduct must be 'intended to injure in some way unjustifiable by any government interest.'" *Id.* (quoting *Lewis, supra*). This issue essentially merges with the rational basis review to be accorded any privacy interest not considered fundamental. *See Huntington Properties, supra.*

In terms of justification, defendants argue such disclosure serves the "important public policy" of "providing broad access to all public records." Defendants cite statutes relating to access to public records, referring to them as an "embodiment" of this policy. *See* N.C. Gen. Stat. §§ 126-23, 132-1.3, 132-6 (2002). They also assert that the release of plaintiff's records was authorized under G.S. § 126-24.

G.S. § 126-22 declares that:

> Personnel files of State employees, former State employees, or applicants for State employment shall not be subject to inspection and examination as authorized by G.S. 132-6 [public records act]. For purposes of this Article, a personnel file consists of any information gathered by the department . . . which employs an individual, previously employed an individual, or considered an individual's application for employment, or by the office of

State Personnel, and which information relates to the individual's application, selection or nonselection, promotions, demotions, transfers, leave, salary, suspension, performance evaluation forms, disciplinary actions, and termination of employment wherever located and in whatever form.

G.S. § 126-23 excepts certain information regarding name, age, hire date, position, and salary from the provisions of G.S. § 126-22 without limitation. Limited exceptions to G.S. § 126-22 are set out in G.S. § 126-24, which allows inspection of an employee's personnel file by (1) the employee, (2) his or her supervisor, (3) members of the General Assembly, (4) parties holding court orders, and (5) federal or state government officials or department heads under certain circumstances. G.S. § 126-24 also provides that:

> Notwithstanding any other provision of this Chapter, any department head may, in his discretion, inform any person . . . of any promotion, demotion, suspension, reinstatement, transfer, separation, dismissal, employment or nonemployment of any applicant, employee or former employee employed by or assigned to his department or whose personnel file is maintained in his department and the reasons therefor and may allow the personnel file of such person or any portion thereof to be inspected and examined by any person . . . when such department head shall determine that the release of such information or the inspection and examination of such file or portion thereof is essential to maintaining the integrity of such department or to maintaining the level or quality of services provided by such department; provided that prior to releasing such information . . ., such department head shall prepare a memorandum setting forth the circumstances [he] deems to require such disclosure and the information to be disclosed. The memorandum shall be retained in the files of said department head and shall be a public record.

It is conceivable that, where an employee settles an employment grievance with the State, a department head might need to disclose some information from the employee's personnel file to maintain the integrity of the department. However, even despite the statutory basis, it is difficult to conceive of a rational relation between defending the propriety of a grievance settlement and disclosing the employee's social security number, medical diagnoses, family member names and addresses, and personal financial data, all of which plaintiff alleges were disclosed. The facts as alleged by plaintiff in the

present case do not indicate any special features of plaintiff's settlement or situation that would require a wholesale public disclosure of his file under the statutory exception. Moreover, plaintiff alleges in his complaint that the disclosure was wholly unjustified. For purposes of the Rule 12(b)(6) motion, plaintiff has overcome the high level of deference accorded to governmental action on rational basis review.

Thus, plaintiff has alleged an intentional and unjustified disclosure of the entire contents of his personnel file in a context which, if proven, offends a sense of justice. We note that our courts have held that the level of substantive due process protection provided by the North Carolina Constitution is at least as broad as that of the United States Constitution. *See Guice*, 141 N.C. App. 177, 541 S.E.2d 474. Therefore, because we hold here that plaintiff states a claim for violation of his substantive due process rights under the federal constitution, he states one for a violation of his rights under the North Carolina Constitution as well.

[2] Next, plaintiff asserts the trial court also erred in dismissing his § 1983 claim for violation of his rights to substantive due process under the federal constitution against the State of North Carolina, NCDOC, NCDOT, and individual defendants in their official capacities for lack of subject matter or personal jurisdiction. N.C.R. Civ. P. 12(b)(1), (b)(2) (2002). Plaintiff also assigned error to the trial court's dismissal of his state substantive due process claim against all but individual defendants in their official capacities. However, due to plaintiff's failure to discuss this assignment of error in his primary brief, we deem it abandoned. N.C.R. App. P. 28(b)(6) (2002).

Evaluation of the applicability of § 1983 claims to the State or state officials is generally bifurcated according to the kind of relief requested. *See Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992). Here, plaintiff requests both monetary damages and injunctive relief. Following U.S. Supreme Court precedent, the courts of this State have held that the State and state officials acting in their official capacities are not "persons" within the meaning of § 1983 for purposes of recovering money damages. *See Hawkins v. State*, 117 N.C. App. 615, 624, 453 S.E.2d 233, 238 (1995). Therefore, the trial court did not err in granting defendants' motion to dismiss plaintiff's claim for money damages.

[3] However, where a plaintiff seeks injunctive relief against the State and its officials, state officials acting in their official capacities

are considered "persons" under § 1983. *See Corum*, 330 N.C. at 771, 413 S.E.2d at 282-83. Because plaintiff's complaint included a prayer for injunctive relief and the trial court granted the dismissal of "all claims brought under § 1983," we must assume that the trial court's dismissal included plaintiff's claim for injunctive relief. Dismissal of this claim was error. Plaintiff stated a claim for violation of his rights to substantive due process under the federal constitution and individual defendants in their official capacities are not immune from suit for injunctive relief on this claim.

**[4]** In their cross-assignment of error, defendants Garrett and Does #1 and #2 argue that the trial court erred in denying their motion to dismiss this § 1983 claim against them in their individual capacities on the grounds of qualified immunity. In contrast to the State and officials sued in their official capacities, public officials sued in their individual capacities for violations of § 1983 may be held liable for monetary damages. *See Corum*, 330 N.C. at 772, 413 S.E.2d at 283. As a defense, such defendants may under certain circumstances raise the doctrine of qualified immunity as a bar to both suit and liability. *See id.* at 772-73, 413 S.E.2d at 284. The defense of qualified immunity shields government officials from personal liability under § 1983 " 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Andrews v. Crump*, 144 N.C. App. 68, 75-76, 547 S.E.2d 117, 122, *disc. review denied*, 354 N.C. 215, 553 S.E.2d 907 (2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410 (1982)).

In its order, the trial court held that qualified immunity "is not a basis for a Rule 12(b) dismissal," but rather "must be pleaded as a defense," and thus also refused to consider defendants' supporting affidavits. However, while qualified immunity certainly must be pleaded in a defendant's answer, it may also be raised in a motion to dismiss under Rule 12(b) made prior to any responsive pleading. *See Behrens v. Pelletier*, 516 U.S. 299, 133 L. Ed. 2d 773 (1996); *McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998); *Jenkins v. Medford*, 119 F.3d 1156 (4th Cir. 1997); *McWaters v. Rick*, 195 F.Supp.2d 781 (E.D.Va. 2002); *Block*, 141 N.C. App. 273, 540 S.E.2d 415; *Hawkins*, 117 N.C. App. 615, 453 S.E.2d 233. When raised by motion, qualified immunity is generally raised on a Rule 12(b)(6) motion to dismiss. *See, e.g., Locus v. Fayetteville State Univ.*, 102 N.C. App. 522, 402 S.E.2d 862 (1991). It follows that on a motion to dismiss on grounds of qualified immunity, the trial court may look only to the allegations of the complaint to

determine whether qualified immunity is established. *Behrens, supra; McWaters, supra.* Thus, the trial court erred in holding that it could not evaluate the issue of qualified immunity at this stage, but it properly refused to consider defendants' affidavits on the subject.

**[5]** The qualified immunity inquiry requires a determination of whether the right at issue was clearly established at the time it was allegedly violated. *See Andrews, supra.* We have determined that plaintiff has alleged an intentional and arbitrary deprivation of his privacy interests by defendants' disclosure of the information contained in his personnel files that is not related to any legitimate government objective. Arbitrary acts that have an abusive purpose and lack legitimate justification violate due process. *See Lewis,* 523 U.S. 833, 140 L. Ed. 2d 1043. The statutory scheme set out in Chapter 126 of the General Statutes for the protection of the confidentiality of state personnel records would also indicate that disclosures of employees' private information should not be done lightly. *See* N.C. Gen. Stat. §§ 126-22, 126-23, 126-24, 126-27. The right to be free of arbitrary, abusive, and illegitimate government action, such as that described in the complaint, is a clearly established right of which a reasonable person in defendant Garrett's or any other official position would have been aware. Therefore, at this stage of the proceedings, defendants Garrett and Does #1 and #2 are not entitled to dismissal of plaintiff's § 1983 claim for violation of his federal substantive due process rights on the basis of qualified immunity.

## II.  Procedural Due Process

**[6]** Plaintiff next contends that the trial court erred in dismissing his claim for violation of his federal and state procedural due process rights. Both the Fourteenth Amendment to the U.S. Constitution and Article I, Section 19 of the North Carolina Constitution provide protection against deprivation of liberty or property interests secured by the Bill of Rights or created by state law without adequate procedure, such as notice and an opportunity to be heard. *See Paul v. Davis,* 424 U.S. 693, 47 L. Ed. 2d 405 (1976); *Wuchte v. McNeil,* 130 N.C. App. 738, 505 S.E.2d 142 (1998); *Howell v. Carolina Beach,* 106 N.C. App. 410, 417 S.E.2d 277 (1992). Decisions as to the scope of procedural due process provided by the federal constitution are highly persuasive with respect to that afforded under our state constitution. *See State v. Young,* 140 N.C. App. 1, 535 S.E.2d 380 (2000).

Plaintiff first alleges defendants inserted "false and stigmatic information" into his personnel file, the dissemination of which has

deprived him of occupational liberty. "[I]njury to reputation by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment." *Siegert v. Gilley*, 500 U.S. 226, 233, 114 L. Ed. 2d 277, 288 (1991). Therefore, in order for false charges made by a state employer to constitute violation of due process, a plaintiff must sufficiently allege:

> 1) that the charges made by Defendants were false; 2) that the charges were made public; 3) that the charges were made in the course of discharge or serious demotion; and 4) that the "charges against [her] . . . 'might seriously damage [her] standing and associations in [her] community' or otherwise 'imposed on [her] a stigma or other disability that foreclosed [her] freedom to take advantage of other employment opportunities.' "

*Shelton-Riek v. Story*, 75 F.Supp.2d 480, 487 (M.D.N.C. 1999) (citing *Stone v. Univ. of Md. Medical Sys. Corp.*, 855 F.2d 167, 173 n.5 (4th Cir. 1988) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573-75, 33 L. Ed. 2d 548, 558-59 (1972))). Although plaintiff alleged facts that might satisfy the first, second, and fourth elements, the complaint contains no allegation that the release of information from plaintiff's file, true or false, was done in connection with any employment action, much less a dismissal or demotion. In fact, plaintiff does not indicate in his complaint that he ever left or was discharged from state employment.

Plaintiff next makes a general argument that he was not provided with due process with regard to the disclosure of information contained in his personnel file. In support of his argument, plaintiff cites cases which involve a state employee's property interest in his or her employment. These cases are not pertinent where plaintiff's personnel file or certain of its contents, rather than the employment itself, are at issue. Moreover, "[i]n order to constitute a property right for purposes of due process, one must have a current valid expectation, based on the government's implied promise to continue this entitlement, in an important, personal, monetizable interest." 16B Am. Jur. 2d, Const. Law § 585 (2002) (citations omitted). Under G.S. § 126-22, plaintiff may have a legitimate expectation of continued confidentiality for his state personnel file, but it is not the kind of "monetizable" property interest generally protected by procedural due process.

Plaintiff makes no argument that the North Carolina Constitution provides greater due process protection for his interest in the confidentiality of his state personnel file than the federal constitution.

Because plaintiff has not alleged a deprivation of a liberty or property interest protected by procedural due process, the trial court did not err in dismissing his claims for violation of his rights to procedural due process under the U.S. and North Carolina Constitutions for failure to state a claim upon which relief may be granted.

Because we find that plaintiff failed to state a claim for violation of his procedural due process rights, we need not address plaintiff's assignment of error with respect to the trial court's dismissal of his federal procedural due process claim pursuant to Rule 12(b)(1) and (b)(2) or individual defendants' cross-assignment of error asserting qualified immunity with respect to those claims.

### III. Equal Protection

[7] Plaintiff also asserts the trial court erred in dismissing his claim for violation of his rights under the federal and state constitutions to equal protection of the law. *See* U.S. Const. amend. XIV, § 1; N.C. Const. Art. I, § 19. Under the Fourteenth Amendment, no state may deny a person equal protection of the laws, either on the face of a statute or policy or in its application. *See Yick Wo v. Hopkins*, 118 U.S. 356, 30 L. Ed. 220 (1886). The equal protection principle "requires that all persons similarly situated be treated alike." *Richardson v. N.C. Dept. of Correction*, 345 N.C. 128, 134, 478 S.E.2d 501, 505 (1996). The Supreme Court of North Carolina has held that the guarantee of equal protection provided in the Fourteenth Amendment to the Federal Constitution has been expressly incorporated in Article I, Section 19 of the N.C. Constitution, and thus the same analysis may be applied to both. *See id.; S.S. Kresge Co. v. Davis*, 277 N.C. 654, 178 S.E.2d 382 (1971); *Hajoca Corp. v. Clayton*, 277 N.C. 560, 178 S.E.2d 481 (1971).

Generally, equal protection doctrine is applied in situations involving discrimination on the basis of group classification or interference with the exercise of some fundamental right. *See, e.g., Dept. of Transportation v. Rowe*, 353 N.C. 671, 549 S.E.2d 203 (2001), *cert. denied*, 534 U.S. 1130, 151 L. Ed. 2d 972 (2002). Plaintiff does not allege that he was discriminated against because he is a member of a particular group, but rather that defendants "singled out Plaintiff for adverse discriminatory treatment."

Plaintiff cites *Village of Willowbrook v. Olech*, 528 U.S. 562, 145 L. Ed. 2d 1060 (2000). In *Olech*, the plaintiffs were refused a connection to the village water supply unless they granted the village a 33-foot easement. They refused, pointing to the fact that other prop-

TOOMER v. GARRETT

[155 N.C. App. 462 (2002)]

erty owners making the same request had been asked to grant only a 15-foot easement. The plaintiffs sued the village for violation of equal protection, alleging, *inter alia*, that the condition imposed by the village was (1) irrational and arbitrary, (2) "motivated by ill will resulting from the Olechs' previous filing of an unrelated, successful lawsuit against the Village," and (3) based on an intentional or reckless disregard for plaintiffs' rights. *Id.* at 563, 145 L. Ed. 2d at 1063. After the trial court granted the Village's· motion to dismiss under Rule 12(b)(6), the Seventh Circuit reversed, holding that where government action reflects a "spiteful effort to 'get' " a plaintiff and there is no relation to any legitimate state objective, a plaintiff states a valid claim for violation of equal protection. *See Olech v. Willowbrook*, 160 F.3d 386, 387 (7th Cir. 1998).

On review, the Supreme Court held that equal protection claims may be brought by " 'a class of one.' " *Olech*, 528 U.S. at 564, 145 L. Ed. 2d at 1063 (citation omitted). According to the Court, the Olechs had managed to state a claim by alleging that the Village intentionally imposed upon them different requirements than had been required of other similarly situated villagers and asserting that "the Village's demand was 'irrational and wholly arbitrary.' " *Id.* at 565, 145 L. Ed. 2d at 1063. The Court indicated that allegations as to the defendants' "subjective motivation" were not essential to this theory. *Id.*

In the present case, plaintiff has alleged that under color of state law defendants released his confidential personnel file to the media, and thus the public, while the files of other similarly situated employees were not released. In his complaint, he alleges that the action by defendants was "arbitrary" and "capricious," as well as "intentional" and "willful," and "wholly without justification in fact or in law." As discussed above, plaintiff has succeeded in alleging that there is no rational basis for defendants' actions with respect to his file. Thus, under *Olech*, taking plaintiff's allegations to be true, as we must at this stage, plaintiff has successfully stated a § 1983 claim for violation of the Equal Protection Clause under the "class of one" theory. *See also In re Application of Ellis*, 277 N.C. 419, 178 S.E.2d 77 (1970) (voiding county commissioners' refusal to grant permit where applicant met all requirements and commission could show no rational basis for refusal); *Bizzell v. Goldsboro*, 192 N.C. 348, 135 S.E. 50 (1926) (ordinance vesting arbitrary discretion in town officials held unconstitutional); *Dobrowolska v. Wall*, 138 N.C. App. 1, 530 S.E.2d 590 (2000) (trial court erred in granting summary judgment for mu-

nicipality on equal protection claim based on arbitrary and capricious action by city that did not survive "rational basis" standard of review).

We hold that plaintiff has stated a claim for a violation of his right to equal protection of the laws and the trial court erred in dismissing plaintiff's claims for equal protection under the federal and state constitutions. We also agree with plaintiff that the trial court erred in dismissing his § 1983 claim against individual defendants in their official capacities with respect to plaintiff's prayer for injunctive relief. In addition, we reject the assertion of qualified immunity by defendants Garrett and Does #1 and #2 for this claim. We have determined that plaintiff stated a claim for violation of his federal equal protection rights based on arbitrary government action. As explained recently in *Hyatt v. Town of Lake Lure*, 225 F.Supp.2d 647, 664 (W.D.N.C. 2002) (quoting *McWaters*, 195 F.Supp.2d at 806, and citing *Olech, supra*) "the right 'to be free of arbitrary and discriminatory application of law' is not a new one." The right allegedly violated by defendants Garrett and Does #1 and #2 is a clearly established one of which a reasonable public official would have known. *Andrews, supra*. At this stage in the proceedings, individual defendants are not entitled to dismissal of plaintiff's § 1983 equal protection claim for monetary damages based on qualified immunity.

### IV.  First Amendment

[8]  Next, plaintiff contends defendants violated his First Amendment right to petition the government for redress of grievances. He argues that defendants disclosed information in his personnel file to the media and public in retaliation for the successful employment grievances he filed against the State. Under § 1983, retaliation by a public official for the exercise of a constitutional right is actionable, even if the official's action would not have been improper if done for different reasons. *Mt. Healthy City School Dist. Bd. of Education v. Doyle*, 429 U.S. 274, 50 L. Ed. 2d 471 (1977). In order to prove a claim for retaliation, a plaintiff must establish the following elements:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

Plaintiff asserts the right to file employment grievances against the State is protected under the Petition Clause of the First Amendment of the United States Constitution. As authority for this assertion, plaintiff cites *San Filippo v. Bongiovanni*, 30 F.3d 424 (3rd Cir. 1994), *cert. denied*, 513 U.S. 1082, 130 L. Ed. 2d 638 (1995), which holds that public employees who file genuine lawsuits or grievances against their government employer are protected against retaliation under the Petition Clause even if the subject matter of the petition is purely private. Plaintiff neglects to point out, however, that only the Third Circuit has adopted this view of the Petition Clause and public employment-related grievances. Most federal circuits have either not addressed the issue or have refused to diverge from Supreme Court precedent requiring that a public employee's speech touch on a matter of public concern to invoke the protection of the First Amendment. *See Rendish v. City of Tacoma*, 123 F.3d 1216 (9th Cir. 1997). It appears that neither North Carolina courts, nor the Fourth Circuit, have adopted the *San Filippo* rule and we decline to do so here. *See Corum*, 330 N.C. at 775, 413 S.E.2d at 285 (public employee's right to speak freely without retaliation limited to matters of public concern). Because plaintiff has failed to satisfy the first element of a § 1983 First Amendment retaliation claim, we need not address the other elements. This assignment of error is overruled.

Because we hold that plaintiff failed to state a claim for violation of his First Amendment rights, we need not address plaintiff's assignment of error with respect to the trial court's dismissal of this claim under Rule 12(b)(1) and (b)(2) and individual defendants' cross-assignment of error asserting qualified immunity.

## V. Tortious Invasion of Privacy

[9] In his complaint, plaintiff sought to allege claims for five different types of common law tortious invasion of privacy, some of which have been rejected by the North Carolina Supreme Court. On appeal, plaintiff addresses only the claim of intrusion into seclusion and thus abandons the other four claims. N.C.R. App. P. 28(a) (2002).

The tort of invasion of privacy by intrusion into seclusion has been recognized in North Carolina and is defined as the intentional intrusion " 'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . [where] the intrusion would be highly offensive to a reasonable person.' " *Miller v. Brooks*, 123 N.C. App. 20, 26-27, 472 S.E.2d 350, 354 (1996) (citation omitted), *disc. review denied*, 345 N.C. 344, 483 S.E.2d 172 (1997). The kinds of

intrusions that have been recognized under this tort include "physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another." *Hall v. Post*, 85 N.C. App. 610, 615, 355 S.E.2d 819, 823 (1987), *reversed on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988). Plaintiff alleges that defendants intentionally obtained information from his state personnel file and gave it to unauthorized individuals. He also alleges that they intentionally used their authority to allow unauthorized persons to examine plaintiff's file. The unauthorized examination of the contents of one's personnel file, especially where it includes sensitive information such as medical diagnoses and financial information, like the unauthorized opening and perusal of one's mail, would be highly offensive to a reasonable person. Therefore, the trial court erred in dismissing plaintiff's claim for intrusion into seclusion for failure to state a claim upon which relief may be granted.

[10] In their second cross-assignment of error, defendants contend that the trial court erred in failing to dismiss plaintiff's common law claims pursuant to their Rule 12(b)(1) and 12(b)(2) motions on the grounds of sovereign and official immunity. Generally, courts may consider matters outside the pleadings in evaluating an assertion of lack of subject matter jurisdiction under Rule 12(b)(1). *See Sperry Corp. v. Patterson*, 73 N.C. App. 123, 127, 325 S.E.2d 642, 646 (1985). However, our Supreme Court has declined to decide whether sovereign immunity is an issue of subject matter jurisdiction or personal jurisdiction. *See Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 293 S.E.2d 182 (1982). Moreover, defendants do not contend in their argument for immunity to plaintiff's state law claims that the trial court should have considered matters outside the complaint. Therefore, we will confine our analysis to the allegations in the complaint.

[11] Sovereign immunity shields the State, its agencies, and officials sued in their official capacities from suit on state law claims unless the State consents to suit or waives its right to sovereign immunity. *See Vest v. Easley*, 145 N.C. App. 70, 549 S.E.2d 568 (2001). The State may waive its immunity through various means, including the purchase of liability insurance, the Tort Claims Act, and breach of a valid contract to which it is a party. *See EEE-ZZZ Lay Drain Co. v. N.C. Dept. of Human Resources*, 108 N.C. App. 24, 27, 422 S.E.2d 338, 340-41 (1992), *overruled on other grounds*, *Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997). Plaintiff's complaint contains no allegation of

waiver of sovereign immunity that would subject the State, NCDOT, NCDOC, or individual defendants in their official capacities to suit on a claim for tortious invasion of privacy and this claim was properly dismissed.

**[12]** Official capacity immunity is a derivative of sovereign immunity that protects public officials sued in their individual capacities. *See Epps v. Duke University, Inc.*, 122 N.C. App. 198, 468 S.E.2d 846, *disc. review denied*, 344 N.C. 436, 476 S.E.2d 115 (1996).

> The essence of the doctrine of public official immunity is that public officials engaged in the performance of their governmental duties involving the exercise of judgment and discretion, and acting within the scope of their authority, may not be held liable for such actions, in the absence of malice or corruption.

*Price v. Davis*, 132 N.C. App. 556, 562, 512 S.E.2d 783, 787 (1999). A public official holds a position created by our State Constitution or the General Statutes and exercises some degree of sovereign power and discretion, as compared with public employees who perform only ministerial duties. *See Block*, 141 N.C. App. 273, 540 S.E.2d 415. Defendant Garrett was the Secretary of the NCDOT during the events in question; he clearly falls into the category of public official. *See* N.C. Gen. Stat. § 143A-9 (2002). Plaintiff's complaint contains multiple allegations that defendant Garrett's actions in releasing and permitting access to plaintiff's file were done outside the scope of authority, maliciously, in bad faith, and for retaliatory reasons. The facts alleged concerning the time frame between his settlement and the release of his file, the scope of information released, and defendant Garrett's release of the file despite warnings that such action would be illegal tend to support plaintiff's claims of malice and bad faith. Therefore, at this stage, individual defendants are not entitled to dismissal of plaintiff's claim for tortious invasion of privacy on the basis of official capacity immunity.

## VI. Breach of Contract

**[13]** Plaintiff asserts the trial court erred in dismissing his claim for breach of contract. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Plaintiff alleges the existence of a settlement contract with the NCDOC, and attaches a copy of the contract to the complaint. The attached copy of the contract contains this provision:

All files, both official and unofficial being retained with Respondent and pertaining to the referenced charge of employment discrimination, will be maintained in an area separate and apart from Charging Party's personnel file.

Plaintiff also alleges that the contract was breached by defendants by their inclusion of the contract in plaintiff's personnel file. Taken as true, plaintiff has stated a claim for breach of contract, even though he may be entitled only to claim nominal damages or injunctive relief for the breach. Therefore, the trial court erred in dismissing plaintiff's claim for breach of contract pursuant to defendant's 12(b)(6) motion.

[14] With regard to defendants' assertions of sovereign immunity, we note that the complaint alleges the existence and breach of a contract between plaintiff and NCDOC. Therefore, on the face of the complaint, plaintiff has sufficiently alleged waiver of sovereign immunity and plaintiff's contract claim may not be dismissed on that basis. *See EEE-ZZZ Lay Drain Co.*, 108 N.C. App. 24, 422 S.E.2d 338. Likewise, plaintiff's allegations of malicious and unauthorized conduct by defendants Garrett and Does #1 and #2 preclude dismissal of plaintiff's contract claim against them in their individual capacities on the basis of official immunity.

## VII.  Gross Negligence

[15] Plaintiff also asserts the trial court erred in dismissing his claim against defendants for gross negligence. Gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988). Plaintiff alleged in his complaint that defendants' conduct was willful, wanton, and done with "deliberate indifference" to his rights.

Aside from allegations of wanton conduct, a claim for gross negligence requires that plaintiff plead facts on each of the elements of negligence, including duty, causation, proximate cause, and damages. *See, e.g., Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 562 S.E.2d 887 (2002). Plaintiff alleged in his complaint that defendants disclosed his confidential personnel file without authority or justification. He also alleged that his employment relationship with defendants was governed by Chapter 126 of the General Statutes: Under various provisions of Chapter 126, personnel files are to be kept confidential and only accessed by certain individuals under

certain conditions. N.C. Gen. Stat. §§ 126-22, 126-24. The statute also provides for criminal penalties for permitting unauthorized access to the records. N.C. Gen. Stat. § 126-27. Allegations regarding defendant Garrett's position at NCDOT and the scope of his authorization under Chapter 126 to release plaintiff's records suffice as allegations that he owed plaintiff a duty to keep the information in his file confidential. Plaintiff also alleged that defendants' conduct proximately caused him to be harassed by third parties. Therefore, we hold that plaintiff adequately stated a claim for relief based on defendant's gross negligence.

[16] In their cross-assignment of error, defendants argue that they are entitled to dismissal of plaintiff's gross negligence claim on the basis of sovereign immunity. Because plaintiff did not sufficiently allege waiver of sovereign immunity by the State, NCDOT, NCDOC, or individual defendants in their official capacities, the claim of gross negligence was properly dismissed with regard to these defendants. *See EEE-ZZZ Lay Drain Co., supra.* However, because plaintiff did sufficiently allege malice and abuse of authority, defendants Garrett and Does #1 and #2 are not entitled to dismissal of the gross negligence claim on the basis of official immunity at this stage. *See Price,* 132 N.C. App. 556, 512 S.E.2d 783.

## VIII. Civil Conspiracy

[17] Plaintiff assigns error to the trial court's dismissal of his claim for civil conspiracy for failure to state a claim for relief. There is no independent cause of action for civil conspiracy. *See Shope v. Boyer,* 268 N.C. 401, 150 S.E.2d 771 (1966). Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement. *See Muse v. Morrison,* 234 N.C. 195, 66 S.E.2d 783 (1951). Plaintiff alleged that defendant Garrett and as yet unknown John Doe defendants acted "in concert" to injure plaintiff and that defendants wantonly or intentionally schemed to retaliate against him by committing the unlawful acts alleged. We hold these allegations sufficient to allege that defendants conspired to commit unlawful acts and to injure plaintiff. Therefore, the trial court erred in dismissing this claim pursuant to defendants' motion.

[18] Lastly, defendants argue that plaintiff's claim for civil conspiracy should have been dismissed on the basis of sovereign and official immunity. Due to plaintiff's failure to allege waiver of sovereign

SACK v. N.C. STATE UNIV.

[155 N.C. App. 484 (2002)]

immunity on the part of the State, NCDOT, NCDOC, and individual defendants in their official capacities, we agree that these defendants are entitled to dismissal of this claim. *See EEE-ZZZ Lay Drain Co., supra.* Official immunity will not protect defendants Garrett and Does #1 and #2 from suit for civil conspiracy in their individual capacities at this stage given plaintiff's allegations of malicious and corrupt conduct. *See Price, supra.*

## Conclusion

In summary, we hold plaintiff's complaint was sufficient to state (1) § 1983 claims for federal substantive due process and equal protection violations for injunctive relief against individual defendants in their official capacities and for damages in their individual capacities; (2) state substantive due process and equal protection claims for injunctive relief against individual defendants in their official capacities; (3) a breach of contract claim against the State, NCDOC, and individual defendants in their official and individual capacities; and (4) common law claims for tortious invasion of privacy, gross negligence, and civil conspiracy against individual defendants in their individual capacities. Insofar as the order appealed from dismisses those claims, it is reversed; otherwise, the order is affirmed.

Affirmed in part, reversed in part, and remanded.

Chief Judge EAGLES and Judge THOMAS concur.