ANGELL COPPER, BY HIS MOTHER AND GUARDIAN AD LITEM, SHERRY COPPER; DESMOND
JOHNSON, BY HIS FATHER AND GUARDIAN AD LITEM, WILMER JOHNSON; ERIC WARREN
AND DION WARREN, BY THEIR MOTHER AND GUARDIAN AD LITEM, DEANN WARREN;
JOSHUA THORPE, BY HIS MOTHER AND GUARDIAN AD LITEM, TRECO THORPE; TODD
DOUGLAS, DECEASED, BY HIS MOTHER AND ADMINISTRATRIX OF HIS ESTATE, SHERYL SMITH;
DEANTONIO RHODES, BY HIS MOTHER AND GUARDIAN AD LITEM, LINDA RHODES;
JAZMYN JENKINS; AND GINA SOLARI; AS INDIVIDUALS AND AS REPRESENTATIVES OF
THE CLASS OF SIMILARLY SITUATED DURHAM PUBLIC SCHOOL STUDENTS, PLAINTIFFS v. ANN
T. DENLINGER, INDIVIDUALLY AND AS SUPERINTENDENT OF DURHAM PUBLIC SCHOOLS;
THE DURHAM PUBLIC SCHOOL BOARD OF EDUCATION; GAIL HEATH, INDI-
VIDUALLY AND AS CHAIR OF THE DURHAM PUBLIC SCHOOL BOARD OF EDUCATION; HEIDI
CARTER, STEVE MARTIN AND STEVE SCHEWEL, INDIVIDUALLY AND AS MEMBERS OF
THE DURHAM PUBLIC SCHOOL BOARD OF EDUCATION; LARRY McDONALD, INDIVIDUALLY
AND AS FORMER PRINCIPAL OF SOUTHERN HIGH SCHOOL; RICHARD WEBBER, INDIVIDU-
ALLY AND AS PRINCIPAL OF C.E. JORDAN HIGH SCHOOL; RODRIQUEZ TEAL, INDIVIDUALLY
AND AS PRINCIPAL OF SOUTHERN HIGH SCHOOL; WORTH HILL, DURHAM COUNTY SHERIFF;
AND R.A. SIPPLE AND JOSEPH COSTA, INDIVIDUALLY, AS AGENTS AND EMPLOYEES OF
THE DURHAM COUNTY SHERIFF, AS AGENTS OF THE SUPERINTENDENT OF DURHAM PUBLIC
SCHOOLS, AND AS AGENTS OF THE DURHAM PUBLIC SCHOOL BOARD OF EDUCATION,
DEFENDANTS

No. COA07-205

(Filed 21 October 2008)

## 1. Appeal and Error— record—not timely filed—sanctions

Defendants' motion to dismiss plaintiff's appeal for failure to timely file the record on appeal was denied because the violation did not hinder review of the merits of the case or impair the adversarial process, but printing costs were assessed as a sanction against plaintiff's counsel.

## 2. Schools and Education— suspensions—no right to appeal— civil rights claim—exhaustion of administrative remedies

The trial court erred by dismissing plaintiffs' 42 U.S.C. § 1983 claims as to short-term school suspensions for gang activity for failure to exhaust administrative remedies. Plaintiffs' allegations that the board of education's current policy does not provide the right to appeal are sufficient to allege futility with respect to the short-term suspensions.

## 3. Schools and Education— short-term suspensions—gang activity—liability of superintendent—no allegations of knowledge

The trial court properly granted a Rule 12(b)(6) motion to dismiss a complaint against a school superintendent concerning short-term suspensions for gang activity where plaintiffs alleged

that the superintendent was liable under 42 U.S.C § 1983 as a supervisory official, but there were no allegations that she was deliberately indifferent to any procedural due process violations by principals when imposing short-term suspensions. Although plaintiffs on appeal raised a respondeat superior theory, they were not able to point to allegations of the superintendent having the required knowledge of the short-term suspensions.

**4. Civil Rights— short-term school suspensions—allegations not sufficient**

The trial court did not err in dismissing plaintiffs' claims against a board of education under 42 U.S.C. § 1983 for short-term suspensions for gang activity. Plaintiffs have provided no argument on appeal as to why the complaint's allegations are sufficient to establish the board's liability for procedural due process violations under *Monell v. New York City Department of Social Services*, 436 U.S. 658.

**5. Schools and Education— short-term suspensions—gang activity—allegations that board policy violated—not violations of due process**

The trial court properly granted defendants' Rule 12(b)(6) motion to dismiss plaintiffs' state constitutional claims with respect to short-term suspensions for gang activity. Plaintiffs contended that the school principals' failure to comply with school board policies violated their procedural due process rights, but it has been held that the school is only required to give students notice of the charges against them and an opportunity to be heard. Plaintiffs failed to allege facts establishing that their procedural due process rights were violated as opposed to the board's policies. N.C. Const. art. I, § 19.

**6. Schools and Education— long-term suspensions—gang activity—§ 1983 claim—exhaustion of administrative remedies—futility**

A complaint containing a claim under 42 U.S.C. § 1983 arising from long-term school suspensions for gang activity contained sufficient allegations that exhaustion of administrative remedies under N.C.G.S. § 115C-45(c) was futile for plaintiff Douglas, and the trial court erred by dismissing his claim, but the allegations as to the remaining plaintiffs were not sufficient. The dismissal of their procedural due process claims based on long-term suspensions were upheld.

**7. Constitutional Law— long-term school suspensions—gang activity—exhaustion of administrative remedies—futility—sufficiency of allegations**

A complaint raising North Carolina constitutional claims arising from long-term school suspensions for gang activity failed to allege sufficient facts to establish futility in the exhaustion of administrative remedies except as to plaintiff Douglas. The trial court did not err by dismissing those claims.

**8. Schools and Education— long-term suspensions—gang activity—lack of opportunity to appeal—procedural due process**

Plaintiff Douglas's complaint, arising from a long-term school suspension for gang activity, sufficiently alleged a claim against defendant board of education that his right to procedural due process was denied through lack of an opportunity to appeal the suspension, and the trial court erred by dismissing his claim. However, plaintiffs failed to make an argument as to how the complaint in this instance complied with the requirements for a 42 U.S.C. § 1983 claim, and that claim was properly dismissed.

**9. Civil Rights— gang related school suspension—claim against superintendent**

The trial court erred by dismissing plaintiff Douglas's claim under 42 U.S.C. § 1983 against a school superintendent in her individual capacity for a long-term suspension arising from gang activity. Defendants' contention would require that the evidence be viewed in the light most favorable to the moving party, which is precluded when deciding a Rule 12(b)(6) motion.

**10. Civil Rights— gang-related school suspension—claim against superintendent—qualified immunity**

The trial court should not have granted a Rule 12(b)(6) dismissal of plaintiff Douglas's 42 U.S.C. § 1983 claim against a school superintendent for a suspension arising from gang activity based on qualified immunity. The question of qualified immunity cannot be resolved in this case at this stage.

**11. Civil Rights— gang-related school suspension—claim against superintendent—punitive damages**

A complaint sufficiently alleged a claim for punitive damages under 42 U.S.C. § 1983 against a school superintendent arising from a student's long-term suspension for gang activity.

**12. Constitutional Law— school suspensions—equal protection**

Allegations of general bias in an equal protection claim cannot substitute for allegations that the discipline of each individual plaintiff at school was motivated by racial discrimination (where there was no class certification).

**13. Constitutional Law— school suspensions—racial profiling**

The trial court did not err by dismissing plaintiffs' equal protection claims based on allegations of profiling in gang-related school discipline. The complaint does not contain any allegation that plaintiffs were falsely accused of gang membership, and the paragraphs of the complaint cited to support racial profiling did not specifically relate to any of the plaintiffs.

**14. Schools and Education— school board policy—gang related suspensions—vagueness**

Plaintiffs sufficiently stated a claim that a school board's policy concerning discipline for gang involvement was facially unconstitutional for vagueness, and the Rule 12(b)(6) dismissal of their claim was reversed and remanded. However, the constitutionality of the policy cannot be decided without review of a list of prohibited items kept by principals and included in a student handbook, and the matter is remanded for further proceedings.

Judge Tyson concurring in part and dissenting in part.

Appeal by plaintiffs from order entered 5 October 2006 by Judge Orlando Hudson in Durham County Superior Court. Heard in the Court of Appeals 13 September 2007.

*Frances P. Solari for plaintiffs-appellants.*

*Cranfill Sumner & Hartzog LLP, by Ann S. Estridge, Alycia S. Levy, and Dan M. Hartzog, Jr., for defendant-appellee Ann T. Denlinger.*

*Tharrington Smith, L.L.P., by Ann L. Majestic and Christine T. Scheef, for defendants-appellees The Durham Public School Board of Education, Gail Heath, Heidi Carter, Steve Martin, Steve Schewel, Larry McDonald, Richard Webber, and Rodriquez Teal.*

*Jack Holtzman for amicus curiae North Carolina Justice Center.*

*Lynn Fontana for amicus curiae ACLU of North Carolina Legal Foundation.*

*Lewis Pitts for amicus curiae Advocates for Children's Services of Legal Aid of North Carolina.*

*Ashley Osment for amici curiae North Carolina State Conference of NAACP Branches and the Triangle Lost Generation Task Force.*

*Sheria Reid for amicus curiae The North Carolina Black Leadership Caucus.*

GEER, Judge.

Plaintiffs—current or former students in the Durham Public School System ("DPS")—brought this action essentially as a wholesale challenge to the disciplinary process in the Durham Public Schools. The lawsuit was dismissed in its entirety under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim for relief and under Rule 12(b)(1) for lack of subject matter jurisdiction.

We must conclude, as the trial court did, that many of plaintiffs' claims must be dismissed for lack of sufficient allegations even though the complaint contains 575 paragraphs. Apparently, in an eagerness to illuminate alleged systemic problems in the Durham schools, plaintiffs overlooked the need to allege a claim for relief on behalf of each individual plaintiff against each individual defendant. By relying substantially on broad assertions regarding DPS discipline and "defendants"—without distinguishing among the defendants—plaintiffs omitted to include in their complaint certain key allegations necessary to survive a motion to dismiss.

The concept of "notice pleading" does not excuse a plaintiff from stating the fundamental elements of his or her claim against each defendant. The regrettable length of this opinion is the result of the Court's need to parse through the complaint as to each plaintiff, for each claim for relief pursued on appeal, while considering the separate rules of liability pertinent to each type of claim for defendant Denlinger (the former superintendent of schools) and the Durham Public School Board of Education ("the Board"), the sole defendants at issue on appeal.

After a paragraph-by-paragraph review of the complaint as it relates to each plaintiff, each remaining defendant, and each claim,

we are compelled to affirm the trial court's dismissal of plaintiffs' claims for violation of their procedural due process rights with the exception of the claim brought on behalf of Todd Douglas (now deceased). We also affirm the dismissal of plaintiffs' equal protection claims. On the other hand, with respect to plaintiffs' constitutional challenge to the Board's policy relating to gangs and gang-related activity, we hold, based on the allegations in the complaint and the policy itself, that plaintiffs have sufficiently stated a claim for relief and, therefore, reverse the order below as to that claim. The arguments asserted by the Board in support of the policy are more appropriately considered at the summary judgment stage. We, therefore, remand for further proceedings regarding the procedural due process claims relating to Todd Douglas and the Board's gang policy.

## Facts and Procedural History

On 24 March 2006, plaintiffs filed suit against the Board; certain individual Board members; Denlinger; current and former principals of Southern High School, Rodriquez Teal and Larry McDonald; the current principal of C.E. Jordan High School, Richard Webber; Durham County Sheriff Worth Hill; and two deputy sheriffs working as school resource officers, R.A. Sipple and Joseph Costa. Plaintiffs sought to proceed on behalf of a class of those minority students who had been unlawfully suspended or expelled since 1 September 2003. No class was, however, ever certified.

The complaint alleged that because of defendants' conduct in connection with short-term and long-term suspensions and the labeling of students as gang members, plaintiffs: (1) were outlawed and exiled without due process of law in violation of the North Carolina Constitution art. I, § 19; (2) were denied public education without due process of law in violation of the Due Process Clause of the United States Constitution and North Carolina Constitution art. I, §§ 15 and 19, and art. IX, § 2; (3) were unlawfully arrested in violation of the Fourth Amendment to the United States Constitution; (4) were denied equal educational opportunity and equal rights in violation of the Fourteenth Amendment to the United States Constitution and North Carolina Constitution art. I, §§ 1, 15, and 19, and art. IX, § 2; (5) were victims of a conspiracy to interfere with the exercise and enjoyment of their constitutional right to equal protection in violation of 42 U.S.C. § 1983(3) and N.C. Gen. Stat. § 99D-1 (2007); and (6) were victims of defamation *per se.* Plaintiffs also sought a declaratory judgment that the Board's pol-

icy 4301.10 ("Prohibition of Gangs and Gang Activities") is unconstitutionally vague and does not comport with the requirements of procedural due process.

Each of the defendants moved to dismiss the complaint. In an order entered 12 July 2006, the trial court first dismissed the claims against the Sheriff's Department defendants, including Sheriff Hill and the school resource officers, Sipple and Costa. Subsequently, in an order entered 5 October 2006, the trial court granted the school defendants' motion to dismiss on 19 separate legal grounds, including insufficient factual allegations for certain claims, the existence of adequate alternative state remedies (precluding state constitutional claims), failure to exhaust administrative remedies, and immunity. The trial court also dismissed the claim for relief regarding the Board's gang policy, concluding that the policy "defines a violation of the policy with sufficient definiteness that a student could understand what conduct was prohibited and it establishes standards to permit enforcement in a non-arbitrary, non-discriminatory manner."

Plaintiffs timely appealed from the 5 October 2006 order only and thus have abandoned their claims against Hill, Sipple, and Costa. In addition, plaintiffs state in their brief: "With the exception of Defendant Denlinger, Plaintiffs' claims against individual school defendants are not brought forward on appeal." Thus, plaintiffs have pursued only their claims against Denlinger and the Board. Plaintiffs have also limited the claims for relief argued on appeal, stating: "The causes of action which are the subject of this appeal are claims under 42 U.S.C. § 1983 and the North Carolina State Constitution for denial of Plaintiffs' rights of due process and equal protection and Plaintiffs' action for judgment declaring the DPS Gang Policy void and unenforceable as unconstitutionally vague on its face."

Plaintiffs have further narrowed the scope of their appeal by failing to bring forward on appeal the claims of several of the individual plaintiffs. Plaintiffs' brief states that Gina Solari has not appealed the dismissal of her claims. In addition, although plaintiffs' brief states the appeal has been brought on behalf of Deantonio Rhodes and Dion Warren, the trial court concluded that those two plaintiffs, as well as Gina Solari, "have failed to state any claims against any school defendants, and those plaintiffs' claims are therefore DISMISSED." Plaintiffs failed to assign error to that ruling and failed to make any specific argument in their brief as to why the court erred in conclud-

ing Rhodes and Dion Warren had not asserted a claim against Denlinger or the Board.[1]

Thus, the only remaining claims on appeal are those asserted on behalf of Angell Copper, Desmond Johnson, Eric Warren, Joshua Thorpe, Todd Douglas (deceased), and Jazmyn Jenkins against Denlinger and the Board for violation of procedural due process and equal protection rights under the state and federal constitutions. Plaintiffs' claim as to the constitutionality of the gang policy has also been brought forward on appeal.

## Motion to Dismiss

**[1]** Defendants Denlinger and the Board have jointly moved to dismiss plaintiffs' appeal based on violations of the North Carolina Rules of Appellate Procedure. In their motion, defendants primarily argue that dismissal is appropriate based on plaintiffs' failure to file the record on appeal with this Court within the period prescribed by Rule 12.[2] Plaintiffs contend that they timely filed the record, and, in any event, any error was a mere technical violation not warranting sanctions. We disagree with both of plaintiffs' contentions.

### A. *Timeliness of Filing of Record on Appeal*

In *White v. Carver*, 175 N.C. App. 136, 622 S.E.2d 718 (2005), this Court outlined the procedures required by the appellate rules for proper and timely settlement and filing of the record on appeal:

> Rule 12(a) of the Rules requires an appellant to file the Record on Appeal within fifteen days of settlement of the record. N.C.R. App. P. 12(a) (2005). The appellant must serve a proposed record on appeal upon the appellee who, within thirty days, may submit amendments, objections, or a proposed alternative record to the appellant. N.C.R. App. P. 11(c). Where the parties agree to the proposed record offered by the appellant or the amendments, objections, or proposed alternative record offered by the appellee, the agreed-upon record constitutes the settled Record on Appeal. *Id.* However, should the parties dis-

---

1. Although we note plaintiffs' brief does contain facts relating to Rhodes in the fact section, there is no corresponding legal argument as to why the complaint states a claim for relief as to Rhodes. Those claims, therefore, are not properly before us.

2. Defendants also point to other violations by plaintiffs of the appellate rules, including the failure to serve the initial proposed record on all parties, incorrect record references following the assignments of error, and the omission of the certification required by N.C.R. App. P. 28(j)(2)(A)(2). We do not specifically address these violations, although we note their existence.

agree as to the inclusion of certain materials, the appellant must either (i) file the disputed items concurrent with the proposed record within fifteen days, or (ii) file for judicial settlement of the record within ten days of expiration of the period for serving amendments, objections, and alternative proposed records. *See id.*; N.C.R. App. P. 12(a).

*Id.* at 142-43, 622 S.E.2d at 722. To determine whether plaintiffs complied with Rule 12(a) in this case, we must first identify the date upon which the record was settled.

Rule 11(b) provides that if the parties have not settled the record on appeal by agreement, the appellant must serve a proposed record on appeal within 35 days after the filing of the notice of appeal if, as here, no transcript was ordered. N.C.R. App. P. 11(b). In this case, plaintiffs timely served their proposed record on appeal on those defendants who are parties to this appeal. Defendants then timely served amendments and objections to that proposed record on 18 December 2006 in accordance with Rule 11(c).

With respect to that stage, Rule 11(c) specifies that "the record on appeal shall consist of each item that is either among those items required by Rule 9(a) to be in the record on appeal or that is requested by any party to the appeal and agreed upon for inclusion by all other parties to the appeal." N.C.R. App. P. 11(c). If, however, "the parties disagree as to the inclusion of certain materials, the appellant must either (i) file the disputed items concurrent with the proposed record within fifteen days, or (ii) file for judicial settlement of the record within ten days of expiration of the period for serving amendments, objections, and alternative proposed records." *White*, 175 N.C. App. at 143, 622 S.E.2d at 722.

In this case, defendants had until 27 December 2006 to serve any amendments, objections, or an alternative proposed record, taking into account service by mail and holidays. Plaintiffs, therefore, had until 8 January 2007 to request judicial settlement. Plaintiffs did not request judicial settlement, but rather reached an agreement with the other parties regarding the contents of the record.

The version of Rule 11(c) applicable to this appeal specified "that nothing herein shall prevent settlement of the record on appeal by agreement of the parties *at any time within the times herein limited for settling the record by judicial order.*" N.C.R. App. P. 11(c) (effective for appeals prior to 1 March 2007) (emphasis added). As a

result, because no judicial settlement was requested and no agreement was reached by 8 January 2007, "the proposed record on appeal, in conformity with defendants' objections and amendments, became the record on appeal" by that date. *Kellihan v. Thigpen*, 140 N.C. App. 762, 764, 538 S.E.2d 232, 234 (2000). *See also White*, 175 N.C. App. at 143, 622 S.E.2d at 722-23 (holding that when appellant failed to file for judicial settlement after receiving amendments and objections, record on appeal was settled by "operation of Rules 11 and 12" even though parties continued to discuss contents of record and subsequently reached agreement).[3]

Rule 12(a) states that "[w]ithin 15 days after the record on appeal has been settled by any of the procedures provided in Rule 11 or Rule 18, the appellant shall file the record on appeal with the clerk of the court to which appeal is taken." N.C.R. App. P. 12(a). Thus, plaintiffs had until 23 January 2007 to file the record on appeal with this Court in order to perfect their appeal from the trial court's order dismissing their claims. Plaintiffs did not, however, file the record with this Court until 14 February 2007—a date 49 days after the deadline for filing objections to the proposed record on appeal and a date "well outside the time period prescribed by the Rules." *White*, 175 N.C. App. at 143, 622 S.E.2d at 723 (holding that 50-day period between appellee's serving amendments and objections to appellant's proposed record on appeal and appellant's filing the record on appeal with appellate court warranted dismissal under Rules 11 and 12). Accordingly, we are compelled to conclude that plaintiffs failed to timely file the record on appeal with this Court.

## B. *Appropriate Sanction*

Although we have determined that plaintiffs violated Rule 12, as well as other appellate rules, our Supreme Court has emphasized that dismissal of an appeal for violations of the appellate rules is not automatic. *See State v. Hart*, 361 N.C. 309, 311, 644 S.E.2d 201, 202 (2007) ("[E]very violation of the rules does not require dismissal of the appeal or the issue, although some other sanction may be appropriate, pursuant to Rule 25(b) or Rule 34 of the Rules of Appellate Procedure."). More recently, the Supreme Court set out in detail the

---

3. This conclusion is confirmed by the Supreme Court's clarifying amendment of Rule 11(c), applicable to appeals filed on or after 1 March 2007, which states: "If any appellee timely serves amendments, objections, or a proposed alternative record on appeal, and no judicial settlement of the record is timely sought, the record is deemed settled as of the expiration of the ten-day period within which any party could have requested judicial settlement of the record on appeal under this Rule 11(c)."

COPPER v. DENLINGER

[193 N.C. App. 249 (2008)]

analytical framework applicable in considering whether to sanction a party for appellate rules violations. *See Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 657 S.E.2d 361 (2008).

In *Dogwood*, the Supreme Court determined that appellate rules violations could be categorized as three distinct types of "defaults": "(1) waiver occurring in the trial court; (2) defects in appellate jurisdiction; and (3) violation of nonjurisdictional requirements." *Id.* at 194, 657 S.E.2d at 363. In this case, we must determine whether a failure to timely file a record on appeal under Rule 12 is a jurisdictional defect or a nonjurisdictional violation. The distinction between the two types of errors is critical: if the appellant fails to properly invoke appellate jurisdiction, the "jurisdictional default . . . precludes the appellate court from acting in any manner other than to dismiss the appeal." *Id.* at 197, 657 S.E.2d at 365. "Moreover, in the absence of jurisdiction, the appellate court[] lack[s] authority to consider whether the circumstances of a purported appeal justify application of Rule 2."[4] *Id.* at 198, 657 S.E.2d at 365.

If, on the other hand, failing to timely file the record is a nonjurisdictional default, the appellate court "possesses discretion in fashioning a remedy to encourage better compliance with the rules." *Id.* Significantly, the Court stressed that "a party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal." *Id.* at 198, 657 S.E.2d at 365.

Turning to whether Rule 12 is jurisdictional, we first note that Rule 27, which governs extensions of time under the appellate rules, provides in part:

Except as herein provided, courts for good cause shown may upon motion extend any of the times prescribed by these rules or by order of court for doing any act required or allowed under these rules; or may permit an act to be done after the expiration of such time. *Courts may not extend the time for taking an appeal or for filing a petition for discretionary review or a*

---

4. Under Rule 2 of the Rules of Appellate Procedure, "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative . . . ." N.C.R. App. P. 2. In *Dogwood*, however, the Supreme Court noted that even if Rule 2 is unavailable, other "discretionary avenues of appellate jurisdiction" may be available under Rule 21. 362 N.C. at 197 n.3, 657 S.E.2d at 365 n.3.

*petition for rehearing or the responses thereto prescribed by
these rules or by law.*

N.C.R. App. P. 27(c) (emphasis added). As filing the record on appeal
does not involve the noticing of appeal or petitioning for discre-
tionary review or rehearing, its deadline may be extended according
to Rule 27(c).

The fact that the deadline in Rule 12 may be extended suggests
that it is not jurisdictional. Our Supreme Court noted in *Dogwood*, 362
N.C. at 198, 657 S.E.2d at 365, that Rule 2 may not be invoked to save
an appeal where appellant has defaulted under one of the rules
described in the last sentence of Rule 27(c). Likewise, the notes of
the drafting committee for Rule 2 indicate that the rule's phrase
" 'except as otherwise expressly provided' [in Rule 2] refers to the
provision in Rule 27(c) that the time limits for taking appeal laid
down in these Rules (i.e. Rules 14 and 15) or in 'jurisdiction' statutes
which are then replicated or cross-referred in these Rules, i.e. Rules
3 (civil appeals), 4 (criminal appeals) and 18 (agency appeals), may
not be extended by any court." *Drafting Committee Note to* N.C.R.
App. P. 2, 287 N.C. 671, 680 (1975). Thus, in contrast to the filing of
the record on appeal, the deadline for filing a notice of appeal in a
civil case under Rule 3 cannot be extended by any North Carolina
court as the rule is jurisdictional. *See Bailey v. State*, 353 N.C. 142,
156, 540 S.E.2d 313, 322 (2000) ("In order to confer jurisdiction on the
state's appellate courts, appellants of lower court orders must com-
ply with the requirements of Rule 3 . . . . The provisions of Rule 3 are
jurisdictional, and failure to follow the rule's prerequisites mandates
dismissal of an appeal." (internal citations omitted)).

This view of Rule 12 as nonjurisdictional is consistent with prior
decisions of the appellate courts exercising discretion in determining
whether to dismiss an appeal after the untimely filing of a record on
appeal. *See, e.g., Cadle Co. v. Buyna*, 185 N.C. App. 148, 153, 647
S.E.2d 461, 465 (2007) (affirming trial court's dismissal of appeal for
failure to timely file record on appeal where appellant "presented no
persuasive basis for setting aside the trial court's dismissal of its
appeal"); *Faison & Gillespie v. Lorant*, 187 N.C. App. 567, 570, 654
S.E.2d 47, 51 (2007) (declining to dismiss appeal for "technical" vio-
lation of Rule 12 where appellant substantially complied with Rule).

Having determined that plaintiffs' violation of Rule 12 does not
result in mandatory dismissal, the issue becomes what sanction, if
any, is appropriate in this case. *Dogwood*, 362 N.C. at 199, 657 S.E.2d

**COPPER v. DENLINGER**

[193 N.C. App. 249 (2008)]

at 366, explained that an appellate court should impose sanctions, including dismissal, only when a party's nonjurisdictional rules violations rise to the level of a "substantial failure" under Rule 25 or a "gross violation" under Rule 34. In the absence of a substantial or gross violation, "the appellate court should simply perform its core function of reviewing the merits of the appeal to the extent possible." *Dogwood*, 362 N.C. at 199, 657 S.E.2d at 366.

Determining whether a violation is "substantial" or "gross" "entails a fact-specific inquiry into the particular circumstances of each case, mindful of the principle that the appellate rules should be enforced as uniformly as possible." *Id.* at 199-200, 657 S.E.2d at 366. A court should consider, among other factors: (1) whether and to what extent the noncompliance impairs the court's task of review, (2) whether and to what extent review on the merits would frustrate the adversarial process, and (3) the number of rules violated. *Id.* at 200, 657 S.E.2d at 366-67. "[O]nly in the most egregious instances of nonjurisdictional default will dismissal of the appeal be appropriate." *Id.*, 657 S.E.2d at 366.

In this case, the violation of Rule 12 has not hindered our review of the merits of the case or impaired the adversarial process. On the other hand, we note that plaintiffs' counsel made no attempt to rectify the error when it was identified by defendants' counsel at the time the record was filed. Plaintiffs' counsel jeopardized review of plaintiffs' claims rather than filing a motion with this Court either requesting a retroactive extension of time pursuant to Rule 27 or that the record be deemed timely filed for good cause shown under Rule 25. *Compare Taylor v. City of Lenoir*, 353 N.C. 695, 696, 550 S.E.2d 141, 141 (2001) (ordering pursuant to Rule 25 that record on appeal be deemed timely filed for good cause shown), *rev'g*, 140 N.C. App. 337, 340, 536 S.E.2d 848, 850 (2000) (dismissing appeal despite class counsel's filing record seven days late and filing motion for extension of time as soon as counsel realized record was untimely).

Instead of taking corrective action, plaintiffs' counsel waited until defendants filed a motion to dismiss and then claimed, without support in the appellate rules, that there either was no violation or it was a "mere technical violation." The untimely filing of the record on appeal is not, however, a mere technical violation, but one that has resulted in the dismissal of appeals in the past. *See, e.g., White*, 175 N.C. App. at 143, 622 S.E.2d at 723 (dismissing appeal when record was not filed until 50 days after appellee served amendments and objections to proposed record); *Byrd v. Alexander*, 32 N.C. App. 782,

783, 233 S.E.2d 654, 655 (1977) (dismissing appeal when record not timely filed and no extension sought).

While we conclude that the *Dogwood* analysis indicates that dismissal of this appeal is not warranted, when we consider that comparable delays in filing have resulted in dismissal and that the record contains other—although relatively minor—violations, we believe that some sanction is warranted. Pursuant to Rule 34(b), we order plaintiffs' counsel to pay the printing costs of this appeal. *See Caldwell v. Branch*, 181 N.C. App. 107, 110-11, 638 S.E.2d 552, 555, *disc. rev. denied*, 361 N.C. 690, 654 S.E.2d 248 (2007). We instruct the Clerk of this Court to enter an order accordingly.

## Merits of the Appeal

"When a party files a motion to dismiss pursuant to Rule 12(b)(6), the question for the court is whether the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Enoch v. Inman*, 164 N.C. App. 415, 417, 596 S.E.2d 361, 363 (2004). " 'A complaint may be dismissed pursuant to Rule 12(b)(6) where (1) the complaint on its face reveals that no law supports a plaintiff's claim, (2) the complaint on its face reveals the absence of facts sufficient to make a good claim, or (3) the complaint discloses some fact that necessarily defeats a plaintiff's claim.' " *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (quoting *Toomer v. Garrett*, 155 N.C. App. 462, 468, 574 S.E.2d 76, 83 (2002), *appeal dismissed and disc. review denied*, 357 N.C. 66, 579 S.E.2d 576 (2003)). In reviewing the dismissal of a complaint for failure to state a claim for relief, the appellate court reviews de novo " 'whether the complaint alleges the substantive elements of a legally recognized claim and whether it gives sufficient notice of the events which produced the claim to enable the adverse party to prepare for trial.' " *Id.* at 274, 620 S.E.2d at 880 (quoting *Toomer*, 155 N.C. App. at 468, 574 S.E.2d at 83).

## I. Short-Term Suspensions

Plaintiffs first claim that their procedural due process rights under both the United States and North Carolina Constitutions were violated when they received short-term suspensions. In oral argument, plaintiffs' counsel represented that three plaintiffs had claims based on short-term suspensions: Joshua Thorpe, Dion Warren, and Eric Warren. As discussed above, because plaintiffs failed to as-

sign error to the trial court's dismissal of Dion Warren's claims, the only claims remaining on appeal are those of Joshua Thorpe and Eric Warren.

The complaint alleges that the short-term suspensions were imposed by the school principals, who are no longer parties to this case. Plaintiffs, however, contend that they are still entitled to recover against Denlinger and the Board under 42 U.S.C. § 1983 for federal constitutional violations. With respect to the state constitutional claims, plaintiffs acknowledge that they may only proceed against the Board. Because the analysis is different under each constitution, we address the claims separately.

A. *Section 1983 Claims*

[2] With respect to the § 1983 claims, both defendants argue that the plaintiffs failed to exhaust their administrative remedies with respect to the short-term suspensions and, therefore, the trial court lacked subject matter jurisdiction over the procedural due process claims. *See Good Hope Hosp.*, 174 N.C. App. at 272, 620 S.E.2d at 879 ("[P]rocedural due process claims may not be brought under § 1983 until administrative remedies have been exhausted."). Alternatively, defendants contend that plaintiffs have failed to allege the elements necessary to impose supervisory liability on Denlinger or to hold the Board liable under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 638, 98 S. Ct. 2018, 2037 (1978). The trial court agreed with defendants both as to exhaustion and the failure of plaintiffs to sufficiently allege § 1983 claims against Denlinger and the Board and, therefore, dismissed the short-term suspension claims under Rule 12(b)(1) and 12(b)(6).

We note that plaintiffs, in their main brief, do not distinguish among defendants at all, referring collectively to "defendants" without recognizing the differing bases for liability among the types of school defendants. In their reply brief, plaintiffs do address the potential supervisory liability of Denlinger, but never specifically address the Board's § 1983 liability.

1. Exhaustion

We turn first to the exhaustion issue because it is a matter of subject matter jurisdiction. "It is well-established that 'where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts.' " *Justice for Animals, Inc. v.*

COPPER v. DENLINGER

[193 N.C. App. 249 (2008)]

*Robeson County,* 164 N.C. App. 366, 369, 595 S.E.2d 773, 775 (2004) (quoting *Presnell v. Pell,* 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979)). If a plaintiff fails to exhaust his or her administrative remedies, the trial court lacks subject matter jurisdiction and the action must be dismissed. *Id.* "[T]he exhaustion requirement may be excused if the administrative remedy would be futile or inadequate." *Id.* at 372, 595 S.E.2d at 777. "[T]o rely upon futility or inadequacy, 'allegations of the facts justifying avoidance of the administrative process must be pled in the complaint.'" *Id.* (quoting *Bryant v. Hogarth,* 127 N.C. App. 79, 86, 488 S.E.2d 269, 273, *disc. review denied,* 347 N.C. 396, 494 S.E.2d 406 (1997)).

In challenging the trial court's dismissal of their procedural due process claims for failure to exhaust administrative remedies, plaintiffs contend that because the Board's official policy does not provide a mechanism for appealing short-term suspensions imposed by school administrators to the Board, there was no administrative remedy available to exhaust. While ordinarily, on a motion to dismiss, we are limited to the allegations in the complaint, a court may consider matters outside the pleadings in deciding a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Harris v. Matthews,* 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007) (holding that court "may consider matters outside the pleadings" when reviewing a Rule 12(b)(1) motion). An appellate court "review[s] Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction de novo . . . ." *Id.*

In response to plaintiffs' contention that no administrative remedy exists, defendants point to the 2001 amendments to N.C. Gen. Stat. § 115C-45 (2007), arguing that those amendments gave students the right to appeal to the Board a final administrative decision regarding "[a]n alleged violation of a specified federal law, State law, State Board of Education policy, State rule, or local board policy . . . ." N.C. Gen. Stat. § 115C-45(c)(2); 2001 N.C. Sess. Laws, ch. 260, s. 1. Nevertheless, plaintiffs allege in their complaint, and defendants do not dispute, that the Board's short-term suspension policy, Board policy 4303.2(A), specifically provides that students do not have a right to appeal their suspensions to the Board. We hold that plaintiffs' allegations that the Board's current policy bars appeal is sufficient to allege futility with respect to the short-term suspensions. The trial court, therefore, erred in dismissing plaintiffs' short-term suspension claims for failure to exhaust administrative remedies.

2. Supervisory Liability

**[3]** Plaintiffs next argue the trial court erroneously concluded that they had failed to state a claim for relief against Denlinger with respect to their short-term suspensions. Plaintiffs do not allege Denlinger personally participated in imposing the short-term suspensions, but rather argue the complaint sufficiently alleges facts necessary to support a claim that Denlinger, as a "supervisory official," is liable under § 1983 for the unconstitutional acts committed by school administrators. We disagree.

While "[t]he principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates[,]" it is equally well recognized that liability "is not premised upon *respondeat superior* . . . ." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813, 814, 130 L. Ed. 2d 24, 115 S. Ct. 67, 68 (1994). The North Carolina appellate courts have not specifically addressed what must be shown for supervisory liability under § 1983, but the Fourth Circuit, in a leading opinion, has held that three elements are necessary:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* at 799 (quoting *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)).

To meet the requirements of the first element, "a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* In addition, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* The second element of deliberate indifference is established "by demonstrating a supervisor's continued inaction in

the face of documented widespread abuses." *Id.* (internal quotation marks omitted). While we are not bound by decisions of the Fourth Circuit, we find the reasoning in *Shaw* persuasive and adopt its long-standing test for § 1983 supervisory liability.

In this case, plaintiffs' complaint alleges with respect to Thorpe that Southern High School Principal Teal gave Thorpe a five-day suspension beginning on 20 September 2005, another five-day suspension on 4 January 2006, and a six-day suspension on 28 February 2006. Eric Warren received a two-day suspension from Jordan High School Assistant Principal Dionne McLaughlin on 7 September 2005 and a three-day suspension from Assistant Principal Chris Tomasic on 8 November 2005.

The complaint contains no allegations that Denlinger had any actual knowledge of any of these short-term suspensions. Indeed, the complaint contains no allegations at all regarding Denlinger's knowledge about principals' practices when imposing short-term suspensions. The complaint includes broad allegations that "[a]s a matter of common custom, practice, and procedure, Durham Public School administrators, including [defendant principals], routinely" engage in specified conduct in connection with short-term suspensions. The complaint, however, fails to allege that Denlinger had any knowledge—actual or constructive—of the principals' conduct, custom, practice, or procedure. In addition, although the complaint does allege that Denlinger "deliberately violated Plaintiffs' constitutional right to procedural due process," that paragraph follows allegations regarding Denlinger's personal conduct in connection with long-term suspensions.

No allegations in the complaint suggest that Denlinger was deliberately indifferent to any procedural due process violations by principals when imposing short-term suspensions. In the absence of these allegations, plaintiffs have failed to state a claim for relief against Denlinger under § 1983 with respect to short-term suspensions. *See W.E.T. v. Mitchell*, 2007 WL 2712924, *12 (M.D.N.C. Sept. 14, 2007) ("Plaintiffs in this case have not alleged in any manner that Denlinger . . . had actual or constructive knowledge of [the teacher's] actions. Thus, having failed to allege the first element of a claim for failure to properly supervise [the teacher], Plaintiffs have failed to state a claim for supervisory liability under § 1983."); *Layman v. Alexander*, 294 F. Supp. 2d 784, 794 (W.D.N.C. 2003) (concluding dismissal of "supervisor liability" claim was proper when "[t]here are no

allegations . . . from which the Court may reasonably infer that either [supervisory officials] had actual or constructive knowledge that their subordinates posed a pervasive and unreasonable risk of constitutional injury to citizens like [plaintiff]").

Plaintiffs addressed the law regarding supervisory liability for the first time in their reply brief. Although plaintiffs recite the test for establishing supervisory liability, plaintiffs' reasoning—focusing on Denlinger being responsible for work delegated to subordinates and having the responsibility to end offensive practices—amounts to a claim based upon a *respondeat superior* theory of liability. Nowhere in their brief do plaintiffs point to any allegation of Denlinger's having the required knowledge with respect to short-term suspensions as opposed to long-term suspensions or procedural due process violations generally.

Although plaintiffs protest that an official's actual or constructive knowledge is a question of fact, their complaint is required to include allegations of the facts necessary to establish a claim for relief. *See id.* at 794 (dismissing supervisory liability claims were plaintiff failed to allege actual or constructive knowledge although plaintiff alleged that defendants failed to adequately supervise their subordinates). Because plaintiffs' complaint does not include the allegations necessary to set forth a claim against Denlinger with respect to short-term suspensions, the trial court properly granted the Rule 12(b)(6) motion as to those claims.

3. Municipal Liability

[4] With respect to the Board, the United States Supreme Court held in *Monell*, 436 U.S. at 694, 56 L. Ed. 2d at 638, 98 S. Ct. at 2037, that a local governmental body could be sued under § 1983, but that liability could not be premised on a theory of *respondeat superior*. Under *Monell*, a municipality may be found liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*, 56 L. Ed. 2d at 638, 98 S. Ct. at 2037-38. The Supreme Court later clarified in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 89 L. Ed. 2d 452, 463, 106 S. Ct. 1292, 1298 (1986) (emphasis omitted), that "[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."

We acknowledge that the United States Supreme Court has held that in § 1983 cases, a plaintiff is only required by Fed. R. Civ. P. 8(a)(2) to include "a short and plain statement" of the basis for liability. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 122 L. Ed. 2d 517, 524, 113 S. Ct. 1160, 1163 (1993). Nevertheless, plaintiffs have provided no argument on appeal as to why the complaint's allegations are sufficient to establish the Board's liability under *Monell* for procedural due process violations. Further, our review of plaintiffs' complaint reveals no allegations regarding any acts of the Board with respect to short-term suspensions. Since plaintiffs have not pointed to any allegations in their complaint that they contend support a claim for relief against the Board under § 1983 under the principles first set forth in *Monell*, we are compelled to hold that the trial court did not err in dismissing plaintiffs' short-term suspension claims against the Board.

B. *North Carolina Constitution*

[5] Plaintiffs have also contended that the procedures used in their short-term suspensions violated the North Carolina Constitution's "law of the land" clause, N.C. Const. art. I, § 19. As noted in discussing the § 1983 claims, plaintiffs' claims regarding short-term suspensions are based solely on the actions of the school principals. Plaintiffs asserted their claims against the principals in both the principals' individual and official capacities. "In a suit against a governmental employee in his official capacity, the plaintiff is seeking relief from the governmental entity that employs the defendant, while in a suit against that employee in his individual capacity, the plaintiff is seeking relief from the defendant as an individual." *Oakwood Acceptance Corp. v. Massengill*, 162 N.C. App. 199, 209, 590 S.E.2d 412, 420 (2004).

Thus, a claim against a school principal in his or her official capacity constitutes a claim against the Board for purposes of bringing a claim under the state constitution. *See Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21 (1997) ("[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 87 L. Ed. 2d 114, 121, 105 S. Ct. 3099, 3105 (1985))). Based on this reasoning, the trial court in this case dismissed "plaintiffs' claims against the individual defendants in their official capacity [as] redundant because the Durham Public Schools Board of Education is also named as a

COPPER v. DENLINGER

[193 N.C. App. 249 (2008)]

defendant." Plaintiffs' claims under the state constitution may, therefore, be based on the actions of the school principals even though plaintiffs elected not to appeal the dismissal of their claims against the principals.

In the landmark decision, *Corum v. University of North Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431, 113 S. Ct. 493 (1992), our Supreme Court held that "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." Before the trial court and on appeal, the Board argued that plaintiffs' state constitutional claims were precluded because an adequate state remedy exists. The trial court agreed with the Board and dismissed plaintiffs' due process claims on that ground: "Adequate state remedies were available to plaintiffs for their state constitutional claims; therefore, plaintiffs' state constitutional claims for violations of their procedural due process and equal educational opportunity rights are DISMISSED."

Although plaintiffs addressed the trial court's separate conclusion that plaintiffs' claims were barred by a failure to exhaust their administrative remedies, plaintiffs' brief does not contain any specific argument regarding the trial court's determination that adequate alternative remedies exist. Even if plaintiffs' assignments of error could be construed as assigning error to this particular conclusion of law, Rule 28(b)(6) provides that "[a]ssignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned."

In any event, plaintiffs have failed to demonstrate on appeal that the trial court erred in its alternative basis for dismissal: "Viewing the facts in the light most favorable to the plaintiffs, they have failed to allege sufficient facts to state a claim for relief for a violation of their state or federal due process rights against any defendants." Plaintiffs do not contend that the North Carolina constitution provides greater due process protection than the federal constitution. In *In re Alexander v. Cumberland County Bd. of Educ.*, 171 N.C. App. 649, 657, 615 S.E.2d 408, 414 (2005), this Court held, citing *Goss v. Lopez*, 419 U.S. 565, 581-84, 42 L. Ed. 2d 725, 738-40, 95 S. Ct. 729, 739-41 (1975), that "prior to imposing a short-term suspension of ten days or less, the school is only required to give the student notice of the charges against her and an opportunity to be heard—i.e., an opportunity to present her version of the incident."

Instead of focusing on the *Goss* test, plaintiffs assert that "[t]he allegations in Plaintiffs' verified complaint demonstrate a common custom and practice by Defendants to disregard procedures required by DPS policies [governing short-term suspensions]." Plaintiffs then argue that "[d]efendants are bound by their own regulations," and, therefore, the principals' failure to comply with Board policies violated their procedural due process rights.

As their sole support for this contention, plaintiffs cite *Orange County v. N.C. Dep't of Transp.*, 46 N.C. App. 350, 382, 265 S.E.2d 890, 910-11, *disc. review denied*, 301 N.C. 94 (1980). In *Orange County*, however, this Court did not address a procedural due process claim, but rather was being asked to determine directly, in connection with a petition for judicial review under the Administrative Procedure Act, whether the Department of Transportation had violated state and federal regulations. Nothing in *Orange County* can be read as holding that a violation of agency regulations necessarily constitutes a denial of procedural due process. Indeed, this Court pointed out in *Orange County* that "there are no state constitutional or statutory requirements which would require the Board of Transportation to hear any citizen," even though the Court also held that the regulations did include a hearing requirement. *Id.* at 382, 265 S.E.2d at 911.

In *Goss*, the United States Supreme Court held that due process requires for short-term suspensions "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 581, 42 L. Ed. 2d at 739, 95 S. Ct. at 740. The Court explained, however, that "[t]here need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is." *Id.* at 582, 42 L. Ed. 2d at 739, 95 S. Ct. at 740.

Plaintiffs have not identified any plaintiff for whom the complaint alleges that these requirements of *Goss* were violated. In their appellants' brief, plaintiffs point to Joshua Thorpe and the complaint's allegations that the school principal did not return his mother's telephone calls. The complaint does not allege, however, that Thorpe himself was not given notice of the reason that he was being sus-

pended or that he was denied an opportunity to tell the principal his side of what occurred. Even with respect to his mother, the complaint acknowledges that the principal's assistant returned the mother's call, and Thorpe's counsel obtained a complete copy of Thorpe's school record, including documentation relating to the short-term suspension at issue. Plaintiffs do not explain in what way these allegations reveal a violation of *Goss*.

Accordingly, plaintiffs have failed to allege facts establishing that their procedural due process rights were violated, as opposed to the Board's policies. The trial court, therefore, properly granted the Rule 12(b)(6) motion to dismiss plaintiffs' claims under the state constitution with respect to short-term suspensions.

II. Long-Term Suspensions

**[6]** Plaintiffs also allege that they were denied procedural due process under both the federal and state constitutions in connection with long-term suspensions. Although the complaint is not entirely clear, it appears that plaintiffs Angell Copper, Desmond Johnson, Jazmyn Jenkins, and Todd Douglas received long-term suspensions.

A. *Section 1983: Exhaustion of Administrative Remedies*

The trial court determined that it lacked subject matter jurisdiction over the long-term suspension claims because plaintiffs failed to allege they exhausted the administrative review process provided in N.C. Gen. Stat. § 115C-45(c). In arguing that the trial court erred, plaintiffs contend that it would have been futile to pursue the administrative remedy.

Although plaintiffs were not required to specifically reference "futility" in their complaint, the complaint was required to include allegations establishing futility. *See Justice for Animals, Inc.*, 164 N.C. App. at 372, 595 S.E.2d at 777 (holding that factual allegations justifying avoidance of administrative process must be pled in complaint). Our review of the complaint discloses no factual allegations that would support plaintiffs' futility argument except for Todd Douglas.

With respect to Douglas, the complaint alleges that he was suspended for 13 days and thus received a long-term suspension entitling him to appeal that suspension. The complaint alleges further that Denlinger wrote a letter dated 8 October 2003 purporting to allow Douglas to transfer to another school as of 9 October 2003, which, according to plaintiffs, would have made the suspension short-term.

Denlinger did not, however, have the letter delivered to Douglas' mother until 14 October 2003, the date that the principal had said Douglas could return to school and day 13 of the suspension. The complaint alleges that Denlinger's letter was designed "to cut off Todd's right to appeal." According to the complaint, Douglas' mother was notified that she had no right to appeal the suspension because it was short-term. Finally, the complaint alleges: "Todd was never given an opportunity to appeal his long-term suspension from Southern High School."

In arguing that these allegations are insufficient to establish futility, defendants contend that Denlinger's letter, as alleged in the complaint, addressed only Douglas' transfer to another school and not the suspension. Defendants do not, however, address the allegations that Douglas was denied an appeal on the ground that his suspension was short-term, even though it exceeded 10 days. We hold that those allegations are sufficient to allege as to Douglas that exhaustion of administrative remedies was futile.

We reach a different conclusion as to Copper, Jenkins, and Johnson. Plaintiffs make no specific argument at all in their brief as to Copper. Plaintiffs argue instead generally that they have "allege[d] a common pattern and practice by Defendants to frustrate the appeals process" and point to not only the allegations regarding Douglas, but also the factual allegations surrounding Jenkins' and Johnson's suspensions. In the complaint, plaintiffs state that after Jenkins and Johnson received their "school-based" disciplinary hearing in accordance with Board policy 4303.4(C), they received letters from Denlinger notifying them that they had until 9 January 2006 to appeal her decision to uphold their suspensions. The complaint alleges that Jenkins' letter was postmarked 14 January 2006; Johnson's letter was postmarked 16 January 2006.

Plaintiffs have, however, failed to address Board policy 4303.4(E), which states that a student may appeal the superintendent's decision to the Board "by giving written notice to the Superintendent and the Board within 10 school days *after receiving* notice of the Superintendent's decision." (Emphasis added.) Thus, regardless of the allegations in the complaint, Jenkins' and Johnson's potential appeals were not foreclosed by the timing of the delivery of Denlinger's letters.

Other allegations in the complaint refute plaintiffs' contention on appeal regarding "a pattern and practice" of thwarting appeals suffi-

cient to allege futility. The complaint contains no allegation that Rhodes, who received a long-term suspension, experienced any interference in his ability to appeal that suspension. More significantly, the complaint alleges, with respect to an earlier long-term suspension of Johnson, that Johnson's father received notice in early January 2005 that Denlinger had suspended Johnson for the remainder of the year and that he had until 28 January 2005 to appeal that decision to the Board. Because of health reasons, Johnson's father failed to appeal prior to the deadline. The complaint alleges, however, that the Board ultimately still heard the appeal, and on 12 May 2005, retroactively reduced Johnson's suspension to 10 days. The complaint's allegations that Johnson pursued the administrative review process and obtained a favorable result—when his appeal was untimely—precludes an inference from the complaint's allegations that pursuit of administrative remedies was futile.

Although plaintiffs did not contend in their brief that they sufficiently alleged that the administrative review process was inadequate (as opposed to futile), plaintiffs' counsel made such a claim during oral argument. The complaint, however, does not contain any allegations relating to the adequacy of the remedy provided by N.C. Gen. Stat. § 115C-45(c). Nor does the complaint contain any allegations from which we can infer that the administrative remedies were inadequate to remedy the procedural due process claims. The possible inadequacy of the administrative remedy is not before this Court.

We, therefore, hold that the complaint contains sufficient allegations that exhaustion of administrative remedies was futile for Douglas. The trial court erred in dismissing his procedural due process claims under Rule 12(b)(1). Because, however, the allegations of the complaint are insufficient as to the remaining plaintiffs, we uphold the dismissal of their procedural due process claims based on the long-term suspensions.

B. *N.C. Constitution: Adequacy of Alternative State Remedy*

[7] The trial court dismissed plaintiffs' state constitutional claims based on long-term suspensions on the grounds that (1) an adequate alternative state remedy existed and (2) plaintiffs had failed to exhaust their administrative remedies. Plaintiffs only assigned error to the exhaustion basis for the trial court's dismissal.

The parties appear to conflate the two concepts. Neither party specifically addresses whether an administrative remedy such as the

one provided under N.C. Gen. Stat. § 115C-45(c) can constitute an adequate alternative state remedy sufficient to preclude a constitutional claim. Nor does either party specifically address whether exhaustion is a prerequisite to bringing a state constitutional claim separate from the "adequate alternative state remedy" analysis. On appeal, plaintiffs simply rely on their argument that exhaustion would have been futile.

"It is not the role of the appellate courts . . . to create an appeal for an appellant." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). As plaintiffs have limited their arguments on appeal to the question whether the administrative remedies were futile, and because we have already concluded the complaint fails to allege sufficient facts to establish futility except as to Douglas, we hold that the plaintiffs other than Douglas have failed to demonstrate that the trial court erred in dismissing their state constitutional claims with respect to long-term suspensions.

C. *Todd Douglas' Procedural Due Process Claims*

[8] In *In re Alexander*, 171 N.C. App. at 657, 615 S.E.2d at 415 (internal citations omitted), this Court held:

As indicated in *Goss*, suspensions for longer than ten days or expulsions for the remainder of the school term or permanently require more formal procedures. This Court has held that when a school board seeks to impose a long-term suspension, a student not only has the right to notice and an opportunity to be heard, the student also has the right to a full hearing, an opportunity to have counsel present at the hearing, to examine evidence and to present evidence, to confront and cross-examine witnesses supporting the charge, and to call his own witnesses to verify his version of the incident.

The complaint alleges that Douglas received a 13-day suspension and, therefore, he was entitled to a full hearing with the procedural protections set out in *Alexander*. The complaint alleges that Douglas was denied an opportunity to any appeal of his long-term suspension and, therefore, alleges a claim that Douglas' right to procedural due process was denied. The question remains, however, whether the complaint alleges a claim against the only remaining defendants, Denlinger and the Board.

These allegations are sufficient to assert a claim against the Board under the North Carolina constitution based on the actions of

the principal and Denlinger in their official capacities. With respect to the adequacy of the alternative state remedy, defendants rely upon only the administrative remedies that plaintiffs contend Douglas was unlawfully denied. Thus, defendants have failed to establish that alternative adequate state remedies existed for Douglas and his mother.[5]

With respect to § 1983, however, plaintiffs again fail to make any argument as to how the complaint complies with the requirements of *Monell* as to Douglas' long-term suspension claim. The trial court, therefore, erred in dismissing the Douglas long-term suspension claim under the North Carolina constitution, but properly dismissed it under § 1983.

[9] With respect to the claim relating to Douglas asserted against Denlinger in her individual capacity under § 1983, plaintiffs do not rely on Denlinger's supervisory liability. The complaint alleges that Denlinger acted "purposefully . . . to cut off Todd's right to appeal." The complaint also alleges that Denlinger's 8 October 2003 letter was a "lie." Although defendants assert that the letter cannot be viewed as addressing Douglas' suspension as opposed to a transfer, that contention would require that we view the allegations in the light most favorable to the moving—rather than the non-moving—party. Such an approach is, of course, precluded when deciding a Rule 12(b)(6) motion to dismiss. The trial court, therefore, erred in dismissing under Rule 12(b)(6) the Douglas long-term suspension claim brought against Denlinger under § 1983.

[10] The trial court, however, also dismissed the § 1983 claim for damages against Denlinger based on qualified immunity. This Court has set out the following test for qualified immunity:

> In order to establish the existence of an official's right to the defense of qualified immunity, one must (1) identify the specific right allegedly violated; (2) determine whether that right was clearly established; and (3) if clearly established, determine whether a reasonable person in the officer's position would have known that his/her actions would violate that right.

---

5. We note that this Court recently held that "a plaintiff must be allowed to pursue claims for the same alleged wrong under both the constitution and state law where one could produce only equitable relief and the other could produce only monetary damages . . . ." *Carl v. State*, 192 N.C. App. 544, 555-56, 665 S.E.2d 787, 796 (2008).

*Moore v. Evans*, 124 N.C. App. 35, 48, 476 S.E.2d 415, 425 (1996). The first two determinations are questions of law for the court. *Id.* "The third determination, however, requires the factfinder to make factual determinations concerning disputed aspects of the officer['s] conduct." *Id.* (internal quotation marks omitted).

We do not believe that the question of qualified immunity can be resolved, in this case, at the motion to dismiss stage. This Court has previously held that while qualified immunity may be raised in a motion to dismiss under Rule 12(b), in deciding "a motion to dismiss on grounds of qualified immunity, the trial court may look only to the allegations of the complaint to determine whether qualified immunity is established." *Toomer*, 155 N.C. App. at 473-74, 574 S.E.2d at 86.

Denlinger argues that the Douglas claims do not involve a clearly established right because "the right to appeal a decision" is not a right protected by due process, but rather by N.C. Gen. Stat. § 115C-391(d5) (2007). We do not, however, read plaintiffs' complaint as referring to the right to appeal to the Board, but rather as referring to the right to the hearing process applicable to long-term suspensions. The right to the type of hearing set forth in *Alexander* was "clearly established" arguably at the time *Goss* was decided in 1975 and definitely by 2002 when this Court rendered its decision in *In re Roberts*, 150 N.C. App. 86, 92-93, 563 S.E.2d 37, 42 (2002) (setting out student's right to hearing to challenge long-term suspension), *appeal dismissed and disc. review improvidently allowed*, 356 N.C. 660, 576 S.E.2d 327, *cert. denied*, 540 U.S. 820, 157 L. Ed. 2d 38, 124 S. Ct. 103 (2003), *overruled in part on other grounds*, 358 N.C. 649, 599 S.E.2d 888 (2004).

With respect to the final prong of the qualified immunity test, the complaint does not allege who informed Douglas' mother that her son had no right to appeal because his suspension was short-term. Nevertheless, the complaint, when viewed in the light most favorable to plaintiffs, alleges that Denlinger, in an attempt to avoid review of the principal's long-term suspension decision, reinstated Douglas on paper without notifying his mother so that Douglas could return to school within 10 days. At this stage, we hold that a reasonable superintendent of schools would have known that she was violating a student's procedural due process rights by taking that action.

This determination does not establish that Denlinger is not entitled to qualified immunity with respect to the Douglas claim. We merely hold that the trial court should not have dismissed the claim

at this stage based on qualified immunity. *See Toomer*, 155 N.C. App. at 474, 574 S.E.2d at 87 (holding that defendants were not entitled to dismissal of claims under Rule 12(b) based on qualified immunity).

**[11]** Finally, Denlinger contends that the trial court properly dismissed any claim for punitive damages. As her sole authority for affirming the trial court's Rule 12(b)(6) ruling, Denlinger cites *Coleman v. Kaye*, 87 F.3d 1491, 1509 (3d Cir. 1996), *cert. denied*, 519 U.S. 1084, 136 L. Ed. 2d 691, 117 S. Ct. 754 (1997), which *upheld a jury's* punitive damages award. Our Supreme Court has held that "notice pleading" principles apply to claims for punitive damages. *Shugar v. Guill*, 304 N.C. 332, 338, 283 S.E.2d 507, 510 (1981). A plaintiff may recover punitive damages under § 1983 when a wrong is done willfully, under circumstances of rudeness or oppression, or in a manner which evidences a reckless and wanton disregard of a plaintiff's rights. *Moore*, 345 N.C. at 371, 481 S.E.2d at 24. Plaintiffs' allegations that (1) Denlinger "purposefully post dated her letter" in order "to cut off Todd's right to appeal" and that her letter was a "lie" are sufficient to meet the requirements of *Shugar* and *Moore*. The complaint, therefore, sufficiently alleges a claim for punitive damages against Denlinger arising out of Douglas' long-term suspension.

We note that the parties have not addressed whether the procedural due process claim survives Douglas' death. We leave that issue to be addressed in the first instance by the trial court. Nothing in this decision should be viewed as expressing any opinion on that issue.

## III. Equal Protection

**[12]** Plaintiffs next challenge the trial court's dismissal of their equal protection claims, arguing that the claims are supported by their allegations of racial profiling and racial discrimination in the administration of discipline. Only the claims of Copper, Johnson, Eric Warren, Thorpe, Douglas, and Jenkins are before the Court.

In support of their equal protection claims, plaintiffs argue generally in their brief that minorities are treated disparately, and they set out in the brief an extensive discussion of allegations suggesting Denlinger is racially biased. Because, however, no class has been certified in this case, the issue is whether the complaint sufficiently alleges on behalf of each plaintiff an equal protection claim against Denlinger and against the Board.

We first note that the trial court's dismissal of the equal protection claims was grounded on both a failure to exhaust administrative

remedies and on Rule 12(b)(6). The trial court erred in applying the exhaustion of administrative remedies doctrine to the equal protection claims. *See Edward Valves, Inc. v. Wake County*, 343 N.C. 426, 434-45, 471 S.E.2d 342, 347 (1996) (holding that § 1983 action based on violation of substantive constitutional right—as opposed to procedural due process—not precluded by failure to exhaust state administrative remedies), *cert. denied*, 519 U.S. 1112, 136 L. Ed. 2d 839, 117 S. Ct. 952 (1997); *Good Hope Hosp.*, 174 N.C. App. at 272, 620 S.E.2d at 879 ("Violation of a substantive constitutional right may be the subject of a § 1983 claim, regardless of whether administrative remedies have been exhausted, because the violation is complete when the prohibited action is taken.").

To state an equal protection claim, plaintiffs must allege that (1) they have been treated differently from others similarly situated to plaintiffs, and (2) the unequal treatment is the result of intentional or purposeful discrimination. *Id.* at 274, 620 S.E.2d at 880. " 'To state an equal protection claim, [plaintiffs] must plead sufficient facts to satisfy each requirement . . . .' " *Id.*, 620 S.E.2d at 880-81 (quoting *Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002)).

Plaintiffs acknowledge that "[i]n order to make out a claim of racial discrimination, a plaintiff 'must allege purposeful discrimination; that is, he must assert that [defendant] took some adverse action against him as a result of a discriminatory animus.' " *Peterkin v. Columbus County Bd. of Educ.*, 126 N.C. App. 826, 827, 486 S.E.2d 733, 734 (1997) (quoting *Sterling v. Se. Penn. Transp. Auth.*, 897 F. Supp. 893, 896 (E.D. Pa. 1995)). Yet, the complaint in this case never alleges that any of the defendants took disciplinary action against Copper, Johnson, Warren, Thorpe, Douglas, or Jenkins based on their race.

Plaintiffs could have alleged that the short-term suspensions or long-term suspensions imposed on these plaintiffs were because of their race, but they did not do so.[6] *Compare Enoch*, 164 N.C. App. at 419, 596 S.E.2d at 364 (holding that plaintiff stated claim for relief under § 1983 when she alleged that defendant "subjected her to race discrimination in failing to promote her in violation of her right to

---

6. With respect to Dion Warren, plaintiffs do allege that a teacher—not a defendant in this case—did not equally enforce rules against white students and that two female Caucasian students engaged in arguably similar behavior to that of Dion Warren, but were not disciplined. Dion Warren's claims are not, however, properly before this Court.

equal protection under the Fourteenth Amendment to the United States Constitution"). Indeed, plaintiffs' brief on appeal does not point to any allegations that plaintiffs were individually subjected to discipline based on their race.

Instead, plaintiffs rely solely upon allegations (1) regarding a letter by Denlinger setting out a "no tolerance" policy for gang-related behavior that plaintiffs contend, upon information and belief, was not sent to African-American families, and (2) allegations regarding statistics indicating that a disproportionate number of minority students are suspended from the Durham public schools. These allegations of general bias cannot, however, substitute for allegations indicating that each individual plaintiff's discipline was motivated by racial discrimination. *See Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994) ("In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.").

**[13]** Plaintiffs additionally argue that they have sufficiently alleged an equal protection claim based on racial profiling. Their entire argument in support of this contention reads:

> Denlinger and the School Board publicly acknowledge that school administrators are not trained to deal with gang activity and must rely heavily on school resource officers to identify students suspected of gang affiliation. (Comp. ¶ 46, 474, R. pp. 11, 475). Plaintiffs allege that Denlinger and the School Board were well aware that school resource officers routinely used impermissible racial profiling to identify students suspected of gang-related activity, (Comp. ¶¶ 477-479, R. p. 45), that they condoned and ratified the use of race as the primary indicator of gang affiliation, (Comp. ¶ 482, R. p. 45), and that, as a consequence of racial profiling, Plaintiffs were falsely accused of gang membership.

The paragraphs of the complaint cited in this portion of the brief do not specifically relate to any of the plaintiffs. Even more significantly, the brief contains no citation to the complaint following the assertion that "as a consequence of racial profiling, Plaintiffs were falsely accused of gang membership." A review of the complaint reveals the reason for this omission: the complaint does not contain any such allegation.

Moreover, the complaint contains allegations that conflict with plaintiffs' contentions on appeal. Although the complaint contains allegations that Copper, Douglas, Jenkins, Johnson, Thorpe, and Eric Warren, all African-American students, were labeled as gang members, the complaint also alleges that school administrators falsely accused Solari—alleged in the complaint to be a Caucasian student—of being the "Cripp Queen." The allegations include, among others:

137. In April 2004, Jordan High School Guidance Counselor Victoria Tirgrath advised Gina's mother that the "common consensus" among Jordan administrators and faculty was that *Gina was involved in gang activity* and should be expelled.

. . . .

159. On or about September 10, 2005, in the presence of [the principal], Defendants [school resource officers] stated to Ms. Warren that Jazmyn Jenkins, Desmond Johnson, Angell Copper, *and Gina Solari*, among others, were known gang members and that Ms. Warren should not permit her sons to associate with them.

. . . .

164. On October 4, 2005, [the school resource officer] falsely stated to Mr. Johnson that Jazmyn Jenkins, Angell Copper, and Eric Warren were known gang members and that *Gina Solari was a gang leader and carried a loaded shotgun in the trunk of her car.*

. . . .

186. A week later, in early November 2005, [the school resource officer] falsely stated to Cassandra Jenkins that Angell Copper, Desmond Johnson, and Eric Warren were gang members and that *Gina Solari was known to be the "Cripp Queen."*

(Emphasis added.) Thus, the complaint alleges that a Caucasian student, Solari, was subjected to the same false gang-member labeling as the African-American plaintiffs. The complaint is, therefore, inconsistent with respect to the claim of racial profiling urged on appeal.[7]

7. We also note that the complaint contains numerous allegations regarding an altercation between Ivey Brooks and plaintiffs Copper, Jenkins, and Johnson in the school lobby. Although the complaint contrasts Brooks' treatment by school adminis-

*See Yusuf*, 35 F.3d at 714 (affirming dismissal of racial discrimination claim where complaint lacked fact-specific allegations of racial animus and included factual allegations indicating "race-neutral factors" that may have led to the challenged conduct).

It may have been a relatively simple matter for plaintiffs to make the necessary allegations. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 152 L. Ed. 2d 1, 11, 122 S. Ct. 992, 999 (2002) (finding complaint sufficient when plaintiff "alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA"); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (in order to avoid dismissal under Rule 12(b)(6), " 'I was turned down for a job because of my race' is all a complaint has to say"). Nonetheless, we may not—in the guise of construing the complaint liberally—supply, on appeal, allegations that are missing. *See Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 1999) ("The 'liberal construction accorded a pleading under [Fed. R. Civ. P. 8] does not require the courts to fabricate a claim that a plaintiff has not spelled out in his pleadings.' " (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1286 at 558 (2d ed. 1990))), *cert. denied*, 531 U.S. 880, 148 L. Ed. 2d 132, 121 S. Ct. 191 (2000). The trial court, therefore, did not err in dismissing plaintiffs' equal protection claims. *Peterkin*, 126 N.C. App. at 828, 486 S.E.2d at 735 ("Having failed to allege facts that would support a § 1983 claim [for racial discrimination], we must conclude that the trial court properly granted defendant's Rule 12(b)(6) motion to dismiss this action.").

IV. Gang Policy

[14] In their final argument, plaintiffs contend the trial court erred in dismissing their claim that the Board's gang policy is unconstitutionally vague on its face. Since the claim challenges the facial validity of the policy, it is, therefore, asserted only against the Board and not against Denlinger.

We are permitted to consider not only the allegations of the complaint itself, but also "documents which are the subject of a plaintiff's

---

trators with that of Copper, Jenkins, and Johnson, the complaint does not indicate Brooks' race apart from an allegation that a school resource officer labeled Brooks as a member of the Blood gang. If Brooks is Caucasian, then, as with Solari, the complaint would suggest that Caucasian students are also subjected to false labeling as gang members. On the other hand, if Brooks is African-American, then the allegations that Brooks was treated more favorably than Copper, Jenkins, and Johnson is inconsistent with the allegations of racial discrimination.

complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). Thus, Board policy 4301.10 is properly before the Court.

The challenged policy reads:

Rule 10: Prohibition of Gangs and Gang Activities. No student shall commit any act which furthers gangs or gang-related activities. A gang is any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of criminal acts and having a common name or common identifying sign, colors, or symbols. Conduct prohibited by this policy includes:

i. Wearing, possessing, using, distributing, displaying, or selling any clothing, jewelry, emblems, badges, symbols, signs or other items which may be evidence of membership or affiliation in any gang;

ii. Communicating either verbally or non-verbally (gestures, handshakes, slogans, drawings, etc.) to convey membership or affiliation in a gang;

iii. Tagging, or otherwise defacing school or personal property with gang or gang-related symbols or slogans;

iv. Requiring payment of protection, insurance, or otherwise intimidating or threatening any person related to gang activity;

v. Inciting other students to intimidate or to act with physical violence upon any other person related to gang activity;

vi. Soliciting others for gang membership;

vii. Committing any other illegal act or other violation of school district policies that relates to gang activity.

The Superintendent/designee shall consult with law enforcement officials semi-annually to establish a list of gang-related items, symbols and behaviors. The principal shall maintain this list in the main office of the school and shall notify students of the items, symbols and behaviors prohibited by this policy. This notice shall be included in the student handbook.

Before being suspended for a first offense of wearing gang-related attire (when not involved in any kind of altercation), a

student will receive a warning and will be allowed to immediately change or remove the attire that is in violation of this policy.

Plaintiffs allege that this policy does not provide adequate notice to students of the precise conduct prohibited, gives excessive subjective discretion to school officials and school resource officers regarding which conduct to punish, and is unconstitutionally vague. The trial court concluded, however, that "[t]he challenged policy defines a violation of the policy with sufficient definiteness that a student could understand what conduct was prohibited and it establishes standards to permit enforcement in a non-arbitrary, non-discriminatory manner." The court, therefore, dismissed the declaratory judgment claim.

While Rule 10 contains a definition of "gang," it does not specify what "clothing, jewelry, emblems, badges, symbols, signs or other items . . . *may be evidence of* membership or affiliation in any gang." (Emphasis added.) Rule 10 also does not define what "gestures, handshakes, slogans, drawings, etc." will be deemed "to convey membership or affiliation in a gang." .

Courts considering similar provisions that could, without further definition, equally encompass innocent and gang-related behavior or dress have found the provisions unconstitutionally vague. The Eighth Circuit Court of Appeals addressed a school policy prohibiting gang-related activities such as display of colors, symbols, signals, or signs. *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1305 (8th Cir. 1997). In addition to holding that the policy was fatally vague for failing to define the term "gang"—not an issue in this case—the court also separately held that the policy was unconstitutionally vague by failing to define the specific gang-related activities that were prohibited:

> Gang symbols, as with display of the flag, take many forms and are constantly changing. Accordingly, the District must "define with some care" the "gang related activities" it wishes students to avoid. The regulation, however, fails to define the term at all and, consequently, fails to provide meaningful guidance for those who enforce it.

*Id.* at 1310 (internal citations omitted).

The court explained further:

> Sadly, gang activity is not relegated to signs and symbols otherwise indecipherable to the uninitiated. In fact, gang sym-

bols include common, seemingly benign jewelry, words and cloth-
ing. For example, color combinations frequently represent gang
symbols. Indeed, the colors red and blue are the colors of our flag
and the colors of two prominent gangs: the Bloods and Crips.
Baseball caps, gloves and bandannas are deemed gang related
attire by high schools around the country, as well as collegiate
logos. A male student wearing an earring, or allowing a shoe-
lace to go untied, is engaging in actions considered gang related.
Even a student who innocently refers to classmates as "folks" or
"people" is unwittingly speaking in the parlance of the Midwest-
ern gangs "Vic Lords" and "Black Gangster Disciples." In short, a
male student walking the halls of a District school with untied
shoelaces, *a Duke University baseball cap* and a cross earring
potentially violates the District regulation in four ways.

*Id.* at 1311 (emphasis added) (internal citations omitted). The
court, therefore, ruled that "the District regulation violates the cen-
tral purposes of the vagueness doctrine because it fails to provide
adequate notice regarding unacceptable conduct and fails to offer
clear guidance for those who apply it. A person of common intelli-
gence must necessarily guess at the undefined meaning of 'gang
related activities.' " *Id.*

Other courts have reached the same conclusion. *See Hodge v.
Lynd*, 88 F. Supp. 2d 1234, 1245 (D.N.M. 2000) (holding that county
fair's policy banning the wearing of clothing that could be indicator of
gang activity did not "in any way specif[y] what is meant by gang
activity, gang symbols, or gang-related apparel" and that "[d]ue to this
lack of specificity, enforcement of the dress code is left to the unfet-
tered discretion of individual officers"); *Chalifoux v. New Caney
Independent Sch. Dist.*, 976 F. Supp. 659, 669 (S.D. Tex. 1997) (hold-
ing that school policy that prohibited the wearing of "gang-related
apparel" was unconstitutionally vague because it lacked a sufficient
definition of such apparel); *City of Harvard v. Gaut*, 277 Ill. App. 3d
1, 7, 660 N.E.2d 259, 263 (1996) (holding that ordinance prohibiting
persons from wearing known gang colors, emblems or other insignia
"is not merely broad, but open-ended and potentially limitless").

The sole case cited by the Board as upholding a gang policy is
*Fuller v. Decatur Pub. Sch. Bd. of Educ. Sch. Dist.*, 251 F.3d 662 (7th
Cir. 2001). In *Fuller*, the plaintiffs were expelled as a result of a fight
at a football game between two rival street gangs. *Id.* at 663-64.
Although the plaintiffs contended that the school policy prohibiting

"gang-like activity" was unconstitutionally vague, the court noted: "Whatever is true of other rules, [the policy in that case] is not devoid of standards. It delineates specific activities which are covered by the rule: recruiting students for membership in a gang, threatening or intimidating other students to commit acts or omissions against their will in furtherance of the purpose of the gang." *Id.* at 666. The court differentiated the policy from that in *Stephenson* "which [was] directed at gang-related activities such as 'display of "colors", symbols, signals, signs, etc.'—activities more likely to implicate First Amendment rights." *Id.* (quoting *Stephenson*, 110 F.3d at 1303).

This case, in contrast to *Fuller*, involves a policy almost identical to the one in *Stephenson*. The Board has not cited any decision upholding a policy comparable to Rule 10 as adopted by the Board.

The Board, however, asserts that a list exists of prohibited items, symbols, and conduct and argues that this list both ensures that students have notice of prohibited conduct and dress and limits the discretion of school administrators enforcing the policy. *See Chalifoux*, 976 F. Supp. at 668 (holding that it would not "be overly burdensome for the District to provide a definite list of prohibited items and to update that list as needed"). According to Rule 10, this list must be maintained in the principal's office and must be included in the student handbook. Amici, however, correctly note that this list is not part of the record before this Court and assert that the student handbook in fact merely recites Rule 10 without including the list of the prohibited items, symbols, and conduct.

Based upon our review of the record, we believe that the constitutionality of Rule 10 cannot be decided without review of the list and consideration whether proper notice has been given to students of Rule 10 and the list. Yet, neither the student handbook nor the list of prohibited items required by the policy are included in the complaint, defendants' Rule 12(b)(6) motion, or anywhere else in the record on appeal. Although amici, in their brief, ask us to take judicial notice of the student handbook to determine the constitutionality of the gang policy, we cannot do so. *See Horton v. New South Ins. Co.*, 122 N.C. App. 265, 268, 468 S.E.2d 856, 858 (holding that "we will not take judicial notice of a document outside the record when no effort has been made to include it"), *cert. denied and disc. review denied*, 343 N.C. 511, 472 S.E.2d 8 (1996).

We note that the arguments of the Board and the amici underscore the need to focus on the procedural posture of this case: the

trial court dismissed the claim under Rule 12(b)(6). None of the cases relied upon by the parties involved such an early stage of the proceedings when the record has not yet been developed. *See Fuller*, 251 F.3d at 664 (appeal from decision following bench trial); *Stephenson,* 110 F.3d at 1306 (appeal from summary judgment order); *Chalifoux*, 976 F. Supp. at 663 (decision following bench trial).

In this case, plaintiffs' allegations in combination with the actual provisions of the Board's policy are sufficient to state a claim that the policy is unconstitutionally vague. The Board may be able to demonstrate at the summary judgment stage that proper notice is supplied to the students sufficient to eliminate any constitutional concerns. At the Rule 12(b)(6) stage, however, the Board has not established that plaintiffs have failed to state a claim for relief. Accordingly, we reverse that portion of the trial court's order dismissing plaintiffs' claim that the gang policy is unconstitutionally vague and remand for further proceedings.

### Conclusion

We deny defendants' motion to dismiss the appeal, but sanction plaintiffs' counsel by requiring counsel to pay the printing costs of the appeal. We affirm the trial court's dismissal of plaintiffs' procedural due process claims with the exception of the claims brought on behalf of Todd Douglas regarding his long-term suspension. We reverse as to the Douglas procedural due process claim under § 1983 against Denlinger and under the North Carolina constitution against the Board and remand for further proceedings. We affirm the trial court's dismissal of plaintiffs' equal protection claims, but reverse the dismissal of plaintiffs' claim for declaratory relief regarding the Board's gang policy.

Affirmed in part; reversed in part.

Judge HUNTER concurs.

Judge TYSON concurs in part and dissents in part in a separate opinion.

TYSON, Judge concurring in part and dissenting in part.

I concur with that portion of the majority's opinion which: (1) affirms the trial court's dismissal of Plaintiff Angell Copper, Desmond Johnson, Eric Warren, Joshua Thorpe, and Jazmyn Jenkins' proce-

dural due process claims; (2) affirms the trial court's dismissal of all of plaintiffs' equal protection claims; and (3) reverses the dismissal of plaintiffs' claim for declaratory relief. I disagree with that portion of the majority's opinion which reverses Todd Douglas' ("Douglas") procedural due process claims against Ann T. Denlinger ("Denlinger"), in her individual capacity, pursuant to 42 U.S.C. § 1983 and the Durham Public School Board of Education ("School Board") pursuant to the North Carolina Constitution. I respectfully dissent.

## I.  Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.

*Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 480, 593 S.E.2d 595, 598 (internal citations and quotation omitted), *disc. rev. denied*, 358 N.C. 543, 599 S.E.2d 49 (2004). This Court is not required " 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.' " *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)). "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd*, 357 N.C. 567, 597 S.E.2d 673 (2003).

## II.  Douglas' 42 U.S.C. § 1983 claim

The majority's opinion holds the trial court erred by dismissing Douglas' long-term suspension claim brought against Denlinger, in her individual capacity, pursuant to 42 U.S.C. § 1983. I disagree.

### A.  Federal Procedural Due Process

Section 1983 of Title 42 of the United States Code provides, in part:

Every person who, under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of any rights, privileges, or immunities secured by the [United States] Constitution* and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2000) (emphasis supplied). Our Supreme Court has stated, "[t]o state a claim under Section 1983, a plaintiff must show actual *deprivation of a federal right* under color of law. Federal rights are those secured by the United States Constitution and federal statutes." *Edward Valves, Inc. v. Wake County*, 343 N.C. 426, 432, 471 S.E.2d 342, 346 (1996) (internal citation and quotation omitted) (emphasis supplied), *cert. denied*, 519 U.S. 1112, 136 L. Ed. 2d 839 (1997).

"The United States Supreme Court has stated that a student facing suspension has a property interest that qualifies for protection under the Due Process Clause of the Fourteenth Amendment." *In re Roberts*, 150 N.C. App. 86, 91-92, 563 S.E.2d 37, 41 (2002) (citing *Goss v. Lopez*, 419 U.S. 565, 576, 42 L. Ed. 2d 725, 735-36 (1975)), *disc. rev. improvidently allowed and appeal dismissed*, 356 N.C. 660, 576 S.E.2d 327, *cert. denied*, 540 U.S. 820, 157 L. Ed. 2d 38 (2003). "At the very minimum . . . students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Goss*, 419 U.S. at 579, 42 L. Ed. 2d at 737. However, "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584, 42 L. Ed. 2d at 740.

In *In re Roberts*, this Court stated, with respect to long-term suspensions, "[t]he protections of due process require that petitioner be apprised of the evidence received and given an opportunity to explain or rebut it." 150 N.C. App. at 92-93, 563 S.E.2d at 42 (citing *Givens v. Poe*, 346 F. Supp. 202, 209 (W.D.N.C. 1972)). Based upon the particular facts of *In re Roberts*, i.e., where the respondent sought to impose a long-term suspension and the Board Policy specifically provided for a factual hearing before the Hearing Board, this Court held the petitioner was entitled to "have the opportunity to have counsel present, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." 150 N.C. App. at 93, 563 S.E.2d at 42. Although the holding in *In re Roberts* was limited to those particular facts, this Court subsequently stated:

COPPER v. DENLINGER

[193 N.C. App. 249 (2008)]

when a school board seeks to impose a long-term suspension, a student not only has the right to notice and an opportunity to be heard, the student also has the right to a full hearing, an opportunity to have counsel present at the hearing, to examine evidence and to present evidence, to confront and cross-examine witnesses supporting the charge, and to call his own witnesses to verify his version of the incident.

*In re Alexander v. Cumberland Cty Bd. of Educ.*, 171 N.C. App. 649, 657, 615 S.E.2d 408, 415 (2005) (citing *In re Roberts*, 150 N.C. App. at 92-93, 563 S.E.2d at 42).

### B. Failure to State a Claim

We must now examine whether the allegations contained in plaintiffs' complaint are sufficient to state a federal procedural due process claim against Denlinger, in her individual capacity, pursuant to 42 U.S.C. § 1983. The majority's opinion holds the trial court erred by dismissing Douglas' long-term suspension claim against Denlinger based upon the following allegations contained in plaintiffs' complaint: (1) "Denlinger purposely postdated her letter October 8 [DAY 9] to cut off [Douglas'] right to appeal" and (2) Denlinger's October 8 letter was a "lie." I disagree with the majority's analysis. Any alleged interference with Douglas' "right to appeal" is insufficient to establish a violation of federal procedural due process under "the United States Constitution" or "federal statutes." *Edward Valves, Inc.*, 343 N.C. at 432, 471 S.E.2d at 346. Our Supreme Court has stated "the question [of] whether the right of appeal is essential to due process of law . . . has frequently been considered by the courts and answered in the negative." *Gunter v. Sanford*, 186 N.C. 452, 457-58, 120 S.E. 41, 44 (1923). "Due process of law . . . is not necessarily judicial process, and to due process the right of appeal is not essential." *Id.* at 458, 120 S.E. at 44.

The procedures to be used in appealing a long-term suspension are statutorily outlined in the North Carolina General Statutes. *See* N.C. Gen. Stat. § 115C-391 (2003). Douglas' "right to appeal" is provided by state statutory law, not federal constitutional law. The allegations in plaintiffs' complaint are insufficient to state a federal procedural due process claim against Denlinger pursuant to 42 U.S.C. § 1983 and were properly dismissed.

Alternatively, I would hold that the preceding allegations are nothing more than "unreasonable inferences" based upon the other

allegations contained in plaintiffs' complaint. *Good Hope Hosp., Inc.,* 174 N.C. App. at 274, 620 S.E.2d at 880. Plaintiffs' complaint alleged Douglas' mother, Mrs. Smith, met with school administrators on multiple occasions after being notified that Douglas was being suspended from school based upon his gang affiliation. On 8 October 2003, a school counselor delivered a letter to Douglas, which was signed by Denlinger and stated "after 'careful review' of [Douglas'] school records," Denlinger believed Douglas presented a danger to the school. The 8 October letter further stated that Denlinger had approved the principal's request for Douglas to transfer from Southern High School to Lakeview High School "effective immediately." Plaintiffs' complaint does not allege that Denlinger's 8 October letter addressed Douglas' suspension or his right to appeal. Further, plaintiffs' complaint does not contain any other allegation sufficient to support the inference that Denlinger informed Mrs. Smith that Douglas did not have the right to appeal a short-term suspension, by letter or any other means of communication. The record shows after Mrs. Smith had retained counsel, met with various administrators, and received the 8 October letter, no further appeal was sought on any basis, nor was there any legal action taken until nearly three years later with the commencement of this lawsuit.

Nothing in the record supports the allegations that Denglinger's 8 October letter was designed to "cut off" Douglas' right to appeal or that it was a "lie." These allegations are nothing more than "unreasonable inferences" that should be disregarded by this Court. *Good Hope Hosp., Inc.,* 174 N.C. App. at 274, 620 S.E.2d at 880. The trial court correctly found that plaintiffs, including Douglas, failed to state a federal procedural due process claim against Denlinger, in her individual capacity, pursuant to 42 U.S.C. § 1983. The trial court's ruling on this issue should be affirmed. Based upon this analysis, it is unnecessary to address whether Denlinger was entitled to qualified immunity or whether Douglas' 42 U.S.C. § 1983 claim survived his death. *See* N.C. Gen. Stat. § 28A-18-1 (2003).

### III.  Douglas' State Constitutional Claim

The majority's opinion further holds that the trial court erred by dismissing Douglas' long-term suspension claim against the School Board pursuant to the North Carolina Constitution. I disagree.

Here, the trial court's order stated the following in regards to plaintiffs' state constitutional claims:

5. State law provides a remedy for challenging final administrative decisions that allegedly violate federal or state statutory or constitutional law or board policy and for challenging long-term suspension or expulsion decisions. North Carolina Gen. Stat. § 115C-45(c) grants students the right to appeal final administrative decisions to the board of education. North Carolina Gen. Stat. § 115C-391(e) grants the right to appeal a long-term suspension or expulsion to the board of education. Under both statutes, the board's decision is subject to judicial review in accordance with Article 4 of Chapter 150B of the General Statutes. Plaintiffs cannot bring direct claims under the North Carolina Constitution when there is an adequate state remedy available. Adequate state remedies were available to plaintiffs for their state constitutional claims; therefore, plaintiffs' state constitutional claims for violations of their procedural due process and equal educational opportunity rights are DISMISSED.

In a separate section of its order, the trial court also dismissed plaintiffs' procedural due process claims and equal educational opportunity rights based upon plaintiffs' failure to allege that they had exhausted their administrative remedies or that these remedies were inadequate. The trial court's order can be read as dismissing plaintiffs' procedural due process claims under the North Carolina Constitution on two alternative and equally valid bases. Plaintiffs have failed to overcome the presumption of correctness in the trial court's order or to show reversible error on this issue.

The majority's opinion acknowledges in two separate instances that plaintiffs failed to assign error to or argue the issue of whether the trial court erred in holding adequate alternative state remedies existed to preclude plaintiffs' state constitutional procedural due process claims. When addressing plaintiffs' short-term suspensions under the North Carolina Constitution, the majority's opinion states:

Although plaintiffs addressed the trial court's separate conclusion that plaintiffs' claims were barred by a failure to exhaust their administrative remedies, *plaintiffs' brief does not contain any specific argument regarding the trial court's determination that adequate alternative remedies exist.* Even if plaintiffs' assignments of error could be construed as assigning error to this particular conclusion of law, Rule 28(b)(6) provides that "[a]ssignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned."

(Emphasis supplied). When addressing plaintiffs' long-term suspensions under the North Carolina Constitution, the majority's opinion also states: "The trial court dismissed plaintiffs' state constitutional claims based on long-term suspensions on the grounds that (1) an adequate alternative state remedy existed and (2) plaintiffs had failed to exhaust their administrative remedies. Plaintiffs only assigned error to the exhaustion basis for the trial court's dismissal."

Because plaintiffs' failed to challenge the trial court's dismissal of plaintiffs' state constitutional procedural due process claims on the basis that an adequate alternative state remedy existed, this issue is not properly before this Court and the trial court's ruling remains undisturbed. *See* N.C.R. App. P. 28(b)(6) (2007) ("Assignments of error not set out in the appellant's brief . . . will be taken as abandoned."). It is well-established that "[a] claim under our state constitution is available only 'in the absence of an adequate state remedy.' " *Craig v. New Hanover Cty Bd. of Educ.*, 185 N.C. App. 651, 655, 648 S.E.2d 923, 926 (2007) (quoting *Corum v. University of North Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992)), *disc. rev. denied*, 362 N.C. 234, 659 S.E.2d 439 (2008). The trial court properly dismissed Douglas' state constitutional claim. Plaintiffs have brought forth no argument on appeal to reverse this ruling. The majority's opinion erroneously reverses the dismissal of Douglas' state constitutional due process claim against the School Board.

## IV. Conclusion

Any alleged interference with Douglas' state statutory "right to appeal" is insufficient to establish a violation of federal procedural due process under the United States Constitution or federal statutes. *Gunter*, 186 N.C. at 458, 120 S.E. at 44. Alternatively, the allegations that Denlinger's 8 October letter "cut off" Douglas' right to appeal and was a "lie" were, at most, "unreasonable inferences" based upon the other allegations contained in plaintiffs' complaint and should be disregarded by this Court. *Good Hope Hosp., Inc.*, 174 N.C. App. at 274, 620 S.E.2d at 880. The trial court properly dismissed Douglas' federal procedural due process claim against Denlinger, in her individual capacity, pursuant to 42 U.S.C. § 1983.

Plaintiffs' failed to challenge the trial court's dismissal of plaintiffs' state constitutional procedural due process claims on the basis that an adequate alternative state remedy existed. This issue is not properly before this Court and the trial court's ruling remains undisturbed. N.C.R. App. P. 28(b)(6). Plaintiffs have brought

forth no argument on appeal to reverse this ruling. The majority's opinion erroneously reverses the dismissal of Douglas' state constitutional procedural due process claim against the School Board. I respectfully dissent.